**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**Jeffrey CORRIGAN and Kirsten Corrigan, as Next Friends of Ryan Corrigan, Appellees,**

and

**Mark Francke and Harold Francke, Defendants.**

No. 04–0723.

Supreme Court of Iowa.

May 6, 2005.

Rehearing Denied June 10, 2005.

Ted J. Wallace, Davenport, for appellant.

Thad J. Collins and Matthew G. Novak of Pickens, Barnes & Abernathy, Cedar Rapids, for appellees.

TERNUS, Justice.

This lawsuit arises from injuries sustained by Ryan Corrigan, son of the appellees, Jeff and Kirsten Corrigan, when Ryan was in the care of Mark Francke, who was providing childcare services to the Corrigans. Mark Francke was later convicted of child endangerment as a re-

sult of this incident. The district court ruled in a summary judgment decision that the appellant, American Family Mutual Insurance Company, had no coverage for claims made by the Corrigans against Mark Francke. The court did, however, find coverage for the Corrigans' claims against Mark's father, Harold Francke, which were based generally on Harold's allegedly negligent supervision of Mark and on Harold's ownership of the premises where the injuries occurred. On appeal, American Family claims that several exclusions in its homeowners policy preclude coverage for these claims.

We agree that based on the undisputed facts, coverage is excluded by the policy exclusion for "bodily injury ... arising out of ... violation of any criminal law for which any insured is convicted." Therefore, we reverse and remand for entry of judgment in favor of American Family.

## I. *Background Facts and Prior Proceedings.*

The record establishes the following facts. Mark Francke operated a daycare business in the home of his father, Harold Francke. On January 16, 2002, eight-month-old Ryan Corrigan was left in Mark's care. Ryan did not seem normal when his father, Jeff Corrigan, took him home that afternoon, so later that evening Jeff took Ryan to a local hospital. Ryan was soon airlifted to the University of Iowa Hospitals where it was determined he suffered injuries resulting from shaken-baby syndrome. Emergency surgery saved the child's life, but Ryan suffered permanent brain damage. During the course of treating Ryan, the doctors discovered that he had suffered other injuries, including four fractured ribs, consistent with prior abuse. Although Mark Francke initially denied he had done anything that could have resulted in Ryan's injuries, Mark eventually pled guilty to child endangerment, in violation of Iowa Code section 726.6 (2001).

The Corrigans filed suit against Mark and Harold seeking damages for the injuries to their son. Their claim against Mark was based on his allegedly negligent, reckless and/or intentional conduct resulting in serious harm to Ryan. The Corrigans' claim against Harold was based on three theories: (1) failure to warn of the danger Mark presented; (2) failure to supervise, monitor, or otherwise take action to discover Mark was a danger; and (3) knowingly allowing dangers to exist at the daycare that created a substantial risk of harm to children on the premises. The Franckes did not file an appearance in this lawsuit, so the court entered a default judgment against them for money damages.

While the tort action was pending, American Family filed the present declaratory judgment action against the Corrigans and the Franckes to establish that a homeowners policy it had issued to Harold, which was in effect on January 16, 2002, did not provide coverage for the injuries suffered by Ryan. Again, the Franckes did not defend, and the district court entered a default judgment against Mark and Harold.

Subsequently, American Family filed a motion for summary judgment, claiming several exclusions in the liability coverage of its policy precluded coverage for the Corrigans' claims against the Franckes. The Corrigans resisted, essentially filing a cross-motion for summary judgment. At the summary judgment hearing, the parties agreed there were no genuine issues of material fact and the case could be decided as a matter of law.

In a subsequent ruling, the district court held there was no coverage for Mark based on the business pursuits and crimi-

nal acts exclusions in the American Family policy. The court concluded these exclusions did not apply to Harold, however, because the Corrigans "[did] not seek to hold Harold vicariously liable for Mark's actions, but assert[ed] separate claims against Harold for negligence." Therefore, the court held, American Family's policy provided coverage for the claims made against Harold.

The Corrigans did not appeal the district court's decision that American Family had no liability under its policy for the judgment the Corrigans obtained against Mark. On the other hand, American Family appealed, reasserting its claim that several policy exclusions preclude coverage for the judgment against Harold. Because we think the criminal acts exclusion applies, we limit our opinion to an analysis of that policy provision. In addition, we consider the Corrigans' contention that the reasonable expectations doctrine requires that coverage be extended to Harold.

## II. *Standard of Review.*

On appeal from a summary judgment ruling, this court reviews the district court's decision for correction of errors at law. *Lee v. Grinnell Mut. Reins. Co.,* 646 N.W.2d 403, 406 (Iowa 2002). We will affirm if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

## III. *General Principles of Insurance Policy Construction and Interpretation.*

In resolving the dispute before us, we must first interpret the insurance policy by ascertaining the meaning of the words used in the parties' contract, and then construe the policy by determining its legal effect. *See LeMars Mut. Ins. Co. v.*

*Joffer,* 574 N.W.2d 303, 306–07 (Iowa 1998). "Construction of an insurance policy and the interpretation of its language are matters of law for the court to decide, when as here, neither party offers extrinsic evidence about the meaning of the policy's language." *Grinnell Mut. Reins. Co. v. Employers Mut. Cas. Co.,* 494 N.W.2d 690, 692 (Iowa 1993). Neither the district court's interpretation of the policy nor its construction of the policy is binding on this court. *Id.*

The principles governing our interpretation and construction of insurance policies are well established:

The cardinal principle in the construction and interpretation of insurance policies is that the intent of the parties at the time the policy was sold must control. Except in cases of ambiguity, the intent of the parties is determined by the language of the policy. "An ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one."

*LeMars Mut. Ins. Co.,* 574 N.W.2d at 307 (citations omitted). "However, a mere disagreement between the parties regarding the meaning of undefined terms does not automatically establish an ambiguity." *Id.*

Due to the adhesive nature of insurance contracts, ambiguous policy provisions are interpreted in the light most favorable to the insured. *See Cairns v. Grinnell Mut. Reins. Co.,* 398 N.W.2d 821, 824 (Iowa 1987). In addition, "exclusions will be strictly construed against the insurer." *Kalell v. Mut. Fire & Auto. Ins. Co.,* 471 N.W.2d 865, 867 (Iowa 1991).

## IV. *Criminal Acts Exclusion.*

The liability coverage of the American Family policy states the insurer "will pay,

up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damages caused by an occurrence covered by this policy." (Emphasis omitted.) The policy also contains a severability-of-interests clause that states the insurance "applies separately to each insured." (Emphasis omitted.)

The liability coverage contains several exclusions. The one pertinent to this case provides: "Violation of Law. We will not cover bodily injury or property damages arising out of ... violation of any criminal law for which any insured is convicted." (Emphasis omitted.) The district court relied on this exclusion in ruling there was "plainly" no coverage for the judgment against Mark. The court's conclusion rested on two undisputed facts: (1) Mark caused Ryan's bodily injuries; and (2) Mark's conduct constituted a violation of criminal law for which he was convicted.

The Corrigans contend the same conclusion is not warranted with respect to coverage for Harold. They argue there were two causes of Ryan's injuries—Mark's conduct and Harold's negligence. Relying on this court's decision in *Kalell*, they assert the mere fact that the injury arising from Mark's intentional acts is excluded does not mean the same injury also caused by Harold's negligent acts is excluded, particularly in view of the policy provision that coverage is applied separately to each insured.

In *Kalell*, an insured sought coverage under his homeowners policy for claims made against him when he attached a rope to his car to remove a dead limb from a tree, resulting in injuries to a third person. 471 N.W.2d at 866. Two causes of the injury were alleged: nonvehicle-related negligence in using a rope to remove the limb and vehicle-related negligence in using a vehicle to pull on the rope. *Id.* at

868. The policy contained an exclusion for bodily injury "arising out of the ... use ... of ... a motor vehicle owned or operated by ... any insured." *Id.* at 866. We concluded the phrase "arising out of" should be interpreted narrowly to exclude " 'only those injuries which are proximately caused by the automobile.' " *Id.* at 868 (citation omitted).

This court then considered how the exclusion should be applied when there are two proximate causes of the third party's injuries, one cause falling within the exclusion and one cause not encompassed in the exclusion. *Id.* We stated the following test for determining when bodily injury *arises out of* the excluded act: "[W]hen two *independent* acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowners policy unless the vehicle-related negligence is the sole proximate cause of the injury." *Id.* (emphasis added). Applying this test to the facts presented in *Kalell*, this court observed that "[r]emoval of a limb with a rope could be negligence without regard to whether a motor vehicle was used to pull the rope." *Id.* We concluded, therefore, that "[t]his [act of negligence] could be found to be an independent act of negligence and one which is covered by the policy." *Id.*

The present case is clearly distinguishable because the acts of negligence alleged against Harold are not independent of the excluded acts of Mark. All three theories of liability asserted against Harold require as an element proof of Mark's conduct in inflicting the injuries. Starting first with the negligent supervision claim, we note that this theory includes " 'as an element an underlying tort or wrongful act committed by the [person who was not properly supervised].' " *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999) (citation omit-

ted); *accord Cubit v. Mahaska County,* 677 N.W.2d 777, 784–85 (Iowa 2004). The failure-to-monitor specification of negligence alleged by the Corrigans is indistinguishable in this respect. Thus, the success of these claims is dependent upon proof that Mark caused Ryan's injuries.

The remaining claims of negligence—failure to warn of the danger posed by Mark, failure to discover this danger, and allowing this danger to exist—are really just different alternatives of the liability imposed on the possessor of land under Restatement (Second) of Torts § 344 (1965). *See generally Continental Ins. Co. v. Bones,* 596 N.W.2d 552, 559 (Iowa 1999) (stating "coverage is controlled by the actual claim asserted against the insured, not the label the claimant chooses to put on his or her claim"). That section provides:

> A possessor of land who holds it open to the public for entry for his business purposes *is subject to liability* to members of the public while they are upon the land for such a purpose, *for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons* or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344, at 223–24 (emphasis added). This rule makes a landowner liable for "the acts of independent contractors ... who are permitted to carry on activities upon the land." Restatement (Second) of Torts § 344 cmt. *c*, at 224. Although the liability imposed on a landowner under section 344 requires proof of the landowner's own negligence in failing to discover the harmful acts, warn visitors of the harmful acts, or protect visitors against the harmful acts, there must also be proof that the physical harm was "caused by the accidental, negligent, or intentionally harmful acts of [a] third person[]." Restatement (Second) of Torts § 344, at 224. Consequently, these specifications of negligence, just like the failure-to-supervise and failure-to-monitor claims, are dependent upon proof that the person constituting the danger caused the physical harm.

Because Mark's acts must be established to prove that Harold's negligence was a proximate cause of Ryan's injuries, none of the claims of negligence alleged against Harold are independent of the wrongful conduct of Mark so as to be subject to the sole-proximate-cause requirement announced in the *Kalell* case.[1] *See Pike v.*

1. The Corrigans claim this conclusion is inconsistent with our decisions in *Gabe's Construction Co. v. United Capitol Insurance Co.,* 539 N.W.2d 144 (Iowa 1995), and *Grinnell Mutual Reinsurance Co. v. Employers Mutual Casualty Co.,* 494 N.W.2d 690 (Iowa 1993). Both cases involved vehicle exclusions in commercial liability policies and in both cases the injured parties alleged multiple causes of their injuries. *Gabe's Constr.,* 539 N.W.2d at 145; *Grinnell Mut.,* 494 N.W.2d at 691–92. This court held the policies provided coverage for nonvehicle-related negligence claims, some of which were based on allegations of failure to supervise. *Gabe's Constr.,* 539 N.W.2d at 147; *Grinnell Mut.,* 494 N.W.2d at

694. Unfortunately, there is no discussion in those cases of whether the nonvehicle-related allegations of negligence were independent of the vehicle-related negligence. It appears this aspect of the multiple-cause test was not challenged. *See Gabe's Constr.,* 539 N.W.2d at 145 (stating primary issue was whether Iowa or Minnesota law governed); *Grinnell Mut.,* 494 N.W.2d at 693 (noting insurer argued vehicle exclusion should apply whenever instrumentality that caused the bodily injury is a vehicle). Therefore, these decisions lack a discussion of the nature of the negligent supervision claims so as to permit a comparison of the holdings in those cases with the decision we reach today. To the extent the

*Am. States Preferred Ins. Co.*, 55 P.3d 212, 216 (Colo.Ct.App.2002) (holding claims of negligent entrustment and supervision were excluded by vehicle exclusion in homeowners policy because these claims were not independent of use of automobile); *Calvin v. Janbar Enters., Inc.*, 856 So.2d 88, 91 (La.Ct.App.2003) (holding vehicle exclusion applied because use of motor vehicle was an essential element of negligent hiring, supervision and retention claims); *Austin Mut. Ins. Co. v. Klande*, 563 N.W.2d 282, 285 (Minn.Ct.App.1997) (holding claim of negligence in failing to keep child away from motorcycle fell within vehicle exclusion because "claim of negligent supervision is not divisible from the ownership and use of the motorcycle itself"); *Taylor v. Am. Fire & Cas. Co.*, 925 P.2d 1279, 1283 (Utah Ct.App.1996) (holding motor vehicle exclusion applied to claims of negligent supervision and control where insured parents' negligence was "firmly grounded" in a failure to supervise use of automobile; use of automobile was essential to improper supervision claim). For the same reason, the bodily injury for which the Corrigans seek compensation from Harold inescapably arises out of Mark's violation of criminal law for which Mark was convicted. *See Muzzio v. Auto–Owners Ins. Co.*, 799 So.2d 272, 274–75 (Fla.Dist.Ct.App.2001) (holding claims that insured negligently hired, supervised and retained truck driver were "inextricably linked with the use of the vehicle" and therefore, "necessarily deemed to arise out of the use of the vehicle"). Therefore, liability coverage for the claims made against Harold is excluded by the criminal acts exclusion. *See Taylor*, 925 P.2d at 1282–83 (noting majority of jurisdictions "reason that where the negligent supervision is so inextricably intertwined with the

motor vehicle, there is no independent non-auto-related act which would take the claim outside the scope of the motor vehicle exclusionary clause").

We have considered the Corrigans' claim that the exclusion is ambiguous and accordingly should be interpreted in their favor, but we find no merit in this argument. The Corrigans point to a discrepancy between the liability and property coverages of American Family's policy to support their claim of ambiguity. The property coverage of the policy, unlike the liability coverage, specifically prefaces the list of exclusions applicable to that coverage with the statement that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." This statement is apparently meant to avoid the sole-proximate-cause requirement courts have adopted in cases of multiple causation. The Corrigans argue American Family could have included such a statement in the liability coverage if it had intended to preclude coverage in multiple causation situations where one cause is excluded and another cause is not. The company's failure to do so, they contend, evidences an intent to extend coverage in multiple-cause situations so long as any one cause is not excluded.

It is true a statement in the liability coverage like the one in the property coverage would have made resolution of the issue in the present case clearer because this court would not have even had to consider the *Kalell* test. But "[a]mbiguity is not present merely because the provision 'could have been worded more clearly or precisely than it in fact was.'" *Cairns*, 398 N.W.2d at 824. In the ab-

*Gabe's Construction* and *Grinnell Mutual* opinions can be interpreted as a retreat from the test set forth in *Kalell,* our decision today

should reaffirm our adherence to the principles set forth in *Kalell.*

sence of a statement in the liability coverage expressly addressing the multiple-cause situation, we are obligated to interpret the criminal acts exclusion using the principles set forth in *Kalell.* As we have already discussed, those principles do not require that Mark's negligence be the sole proximate cause of Ryan's bodily injury in order for the exclusion to apply. That is so because the negligent acts of Harold were not independent of Mark's criminal acts. Therefore, even though the liability coverage does not expressly address multiple-cause situations, the language of the exclusion, interpreted in accordance with our multiple-cause test, precludes coverage for the claims asserted against Harold.

■ The Corrigans also contend the policy's severability-of-interests clause creates an ambiguity. They rely on this court's decision in *United Fire & Casualty Co. v. Shelly Funeral Home, Inc.,* 642 N.W.2d 648 (Iowa 2002), wherein we held a liability insurer had coverage for a claim of negligent supervision. In that case, an insured employee of a funeral home committed intentional acts of sexual misconduct for which there was no coverage. *United Fire,* 642 N.W.2d at 653. At issue on appeal was whether there was coverage for a claim of negligent supervision made against the insured funeral home. *Id.* The insurance company relied on an exclusion that stated the policy did not apply to bodily injury "expected or intended from the standpoint of *the* insured." *Id.* (emphasis added). Noting the policy contained a severability clause, we held whether an injury was intended must be determined from the viewpoint of the insured seeking coverage. *Id.* at 654. Because the funeral home did not intend or expect the injuries inflicted by its employee, we held the exclusion did not apply to the claim made against the funeral home. *Id.*

The Corrigans contend the same result is required here because American Family's policy also contains a severability-of-interests clause. They assert this clause requires that we interpret the policy as if Harold were the only insured. Because Harold did not commit a criminal act for which he was convicted, they argue, coverage for the claim made against him is not excluded by the criminal acts exclusion. This argument is not sound, however, when one examines the language of American Family's exclusion, which is significantly different from the exclusion at issue in *United Fire.*

In order to appreciate the significance of differences in policy language, it is helpful first to understand this court's interpretation of the severability-of-interests clause. This court first addressed the meaning of such a provision in *Zenti v. Home Insurance Co.,* 262 N.W.2d 588 (Iowa 1978). At issue in that case was an exclusion for "bodily injury to any employee of *the* Insured . . . ." *Zenti,* 262 N.W.2d at 589 (emphasis added). We held "the severability-of-interests clause was inserted into insurance contracts to make clear that the employee exclusion is applicable only when the person claiming coverage as insured is the employer." *Id.* at 592. We apparently adopted the rationale of the Maryland Court of Appeals, which stated in a case quoted in our opinion, that the severability-of-interests clause was included in the policy to clarify " 'that the term "insured" does not always mean any insured who could claim coverage under the policy but only the insured claiming coverage.' " *Id.* at 591 (citation omitted); *see also Michael Carbone, Inc. v. Gen. Accident Ins. Co.,* 937 F.Supp. 413, 418 (E.D.Pa.1996) (stating "the vast majority of jurisdictions . . . hold that . . . a separation of insureds clause modifies the meaning of an exclusion phrased in terms of 'the insured' ").

Thus, the severability clause was pertinent in *United·Fire* because the policy at issue in that case excluded coverage for bodily injury "expected or intended from the standpoint of *the* insured." 642 N.W.2d at 653 (emphasis added).

In contrast to the exclusions at issue in *Zenti* and *United Fire*, the American Family policy excludes coverage for bodily injury "arising out of . . . violation of any criminal law for which *any* insured is convicted." (Emphasis added.) This court has held that the term "any insured" as used in an exclusionary provision of the property coverage of a homeowners policy means that coverage is voided as to all insureds if any insured committed a prohibited act. *Webb v. Am. Family Mut. Ins. Co.*, 493 N.W.2d 808, 812 (Iowa 1992); *see Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 751 (Colo.1990) (noting "[t]he majority of courts . . . have held that 'unlike the phrase "the insured," the phrase "any insured" unambiguously expresses a contractual intent . . . to prohibit recovery by an innocent co-insured' "). Although the Corrigans argue the holding of the *Webb* case is not appropriately applied to the interpretation of American Family's liability coverage, we disagree. Our decision in *Webb* rested on "contract analysis of the insurance policy provisions." *Webb*, 493 N.W.2d at 812; *accord Vance v. Pekin Ins. Co.*, 457 N.W.2d 589, 592 (Iowa 1990) (adopting contract analysis to determine meaning of term "an insured"). We have the same focus in the case before us. Thus, we are not persuaded that the term

"any insured" means something different in one part of the homeowners policy than it means in another part of the same policy in the absence of a policy provision requiring divergent interpretations.

American Family's use of the term "any insured" in its criminal acts exclusion unambiguously conveys an intent to exclude coverage when recovery is sought for bodily injury proximately caused by the criminal act of *any* insured. *See Webb*, 493 N.W.2d at 812 (holding use of word "any" unambiguously conveys intention to preclude coverage for all insureds if any insured commits a prohibited act); *Vance*, 457 N.W.2d at 593 (same). Because the language of the exclusion clearly contemplates its applicability to multiple insureds under the policy, it would be unreasonable to interpret the severability-of-interests clause as the Corrigans suggest: that the clause calls for application of the policy as if Harold were the sole insured.[2] To interpret the policy in this manner would require this court to conclude the term "the insured" means the same as "any insured," a conclusion we have rejected in the past. *See Vance*, 457 N.W.2d at 593. Because the Corrigans' suggested interpretation of the severability-of-interests clause is not reasonable when that clause is considered in the context of the entire policy, the severability clause does not create an ambiguity in the criminal acts exclusion. *See Taryn E.F. v. Joshua M.C.*, 178 Wis.2d 719, 505 N.W.2d 418, 420 (Ct.App.1993) (holding severability clause did not render

---

**2.** Other courts have also concluded that "the term 'any insured' unambiguously precludes coverage to all persons covered by the policy if any one of them engages in excludable conduct," notwithstanding a severability clause. *See Taryn E.F. v. Joshua M.C.*, 178 Wis.2d 719, 505 N.W.2d 418, 420, 422 (Ct. App.1993); *accord Michael Carbone*, 937 F.Supp. at 420; *Cal. Cas. Ins. Co. v. Northland Ins. Co.*, 48 Cal.App.4th 1682, 56 Cal.

Rptr.2d 434, 442 (1996); *Chacon*, 788 P.2d at 752; *Oaks v. Dupuy*, 653 So.2d 165, 168–69 (La.Ct.App.1995); *Am. Family Mut. Ins. Co. v. Copeland–Williams*, 941 S.W.2d 625, 627, 629 (Mo.Ct.App.1997); *Great Cent. Ins. Co. v. Roemmich*, 291 N.W.2d 772, 774 (S.D.1980); *cf. Gorzen v. Westfield Ins. Co.*, 207 Mich. App. 575, 526 N.W.2d.43, 45 (1994) (reaching same conclusion when interpreting policy exclusion that referred to "an insured").

exclusion of *"any damages ... attributable to ...* any outrageous conduct on the part of *any* 'insured'" ambiguous); *see also Nat'l Ins. Underwriters v. Lexington Flying Club, Inc.,* 603 S.W.2d 490, 492 (Ky.Ct.App.1979) ("The purpose of severability clauses is to spread protection, to the limits of coverage, among all of the named insureds. The purpose is not to negate bargained-for exclusions which are plainly worded."); *N.W. G.F. Mut. Ins. Co. v. Norgard,* 518 N.W.2d 179, 183–84 (N.D. 1994) (holding exclusion of bodily injury arising out of sexual molestation by any person involved in day care operation clearly placed such risks outside the policy and consequently there was no coverage for claim of negligent supervision despite existence of severability-of-interests clause: "To construe the severability clause to provide coverage in these circumstances is repugnant to the plainly-worded exclusion."). *See generally Grinnell Mut.,* 494 N.W.2d at 692 ("An insurance policy is construed as a whole, not by its separate provisions.").

In summary, we conclude that even though the severability-of-interests clause requires that we apply the criminal acts exclusion from the viewpoint of Harold, the plain language of the exclusion mandates that we consider whether the claims made against Harold include as an element conduct by *any* insured that is a violation of the criminal law. *See Chacon,* 788 P.2d at 752 (holding exclusion for damage "'expected or intended by any insured' ... clearly and unambiguously expresses an intention to deny coverage to all insureds when damage is intended or expected as a result of the actions of any insured," notwithstanding severability clause). As we have already discussed, the facts clearly establish that the negligence claims made against Harold are casually connected to Mark's criminal act; these claims are not distinct and severable from that act. Ac-

cordingly, under our cases, the bodily injury underlying the Corrigans' claims against Harold arises out of Mark's violation of the criminal law, and therefore coverage is excluded.

■ As a final matter, we acknowledge the Corrigans' assertions that the insurance policy should be interpreted to protect the insured's interests and provide compensation to victims of wrongdoing. They argue considerations of public policy dictate that we find coverage for their claims. Although insurance policies are interpreted favorably toward the insured, this rule applies only when there is an ambiguity in the policy, and we have found none here. *See Continental Ins. Co.,* 596 N.W.2d at 558. Thus, this court is constrained by the unambiguous language of the policy in determining whether there is coverage for the judgment obtained by the Corrigans. *See LeMars Mut. Ins. Co.,* 574 N.W.2d at 307 ("Except in cases of ambiguity, the intent of the parties is determined by the language of the policy."); *Moncivais v. Farm Bureau Mut. Ins. Co.,* 430 N.W.2d 438, 442 (Iowa 1988) (stating court may not "ignore the plain meaning of the policy in order to find ambiguity"); *Indianola Country Club v. Fireman's Fund Ins. Co.,* 250 Iowa 1, 6, 92 N.W.2d 402, 405 (1958) (stating "'a court is in duty bound to give effect to exceptions and limitations in a policy as they are written'" citation omitted)). We cannot add to or subtract from the parties' contract based on what this court might think is a preferable public policy in the absence of a legislative, regulatory, or prior judicial statement of that public policy. *See Claude v. Guaranty Nat'l Ins. Co.,* 679 N.W.2d 659, 663 (Iowa 2004) (stating public policy is determined by reference to the constitution, statutes, and the court's prior decisions, not by the court's generalized view of what is fair or just in a particular case);

*Principal Cas. Ins. Co. v. Blair*, 500 N.W.2d 67, 69 (Iowa 1993) (holding family exclusion in homeowners policy did not violate public policy, noting the insureds had not identified any statute or court case that required coverage under the circumstances presented in that case). No statute, rule, or prior decision of this court has been identified that would make the insurance policy provisions at issue here against public policy. *Cf. Sager v. Farm Bureau Mut. Ins. Co.*, 680 N.W.2d 8, 13–14 (Iowa 2004) (refusing to enforce fire policy exclusion for losses arising out of act of "an insured" with the intent or expectation of causing a loss because statute required that exclusions be limited to "the insured" engaging in excluded act): Therefore, we must conclude there is no coverage for the claims made by the Corrigans against Harold and Mark Francke.

### V. *Reasonable Expectations.*

The defendants assert that even if American Family's interpretation of the policy is correct, the doctrine of reasonable expectations mandates coverage. As we have stated on a prior occasion, "The doctrine [of reasonable expectations] is carefully circumscribed and does not contemplate the expansion of coverage on a general equitable basis." *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995). The doctrine " 'can only be invoked [when] an exclusion (1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction.' " *Essex Ins. Co. v. The Fieldhouse, Inc.*, 506 N.W.2d 772, 777 (Iowa 1993) (citation omitted). Moreover, as a precondition to reliance on this doctrine, an insured must establish that an ordinary layperson would misunderstand the policy coverage or that there are circumstances attributable to the insurer that led the insured to expect coverage. *Johnson*, 533 N.W.2d at 206.

We conclude neither of these prerequisites has been satisfied. In *Vance*, this court held a reasonable person in the insured's position would understand that an exclusion for "any loss arising out of any act committed ... by or at the direction of *an* insured" would preclude coverage for all insureds. *Vance*, 457 N.W.2d at 593 (finding exclusion clear and unequivocal in barring coverage for all insureds). The same conclusion is warranted here because, as we have already discussed, the criminal acts exclusion is unambiguous. *See LeMars Mut. Ins. Co.*, 574 N.W.2d at 311 (holding layperson would not misunderstand exclusion that was "clear and unambiguous"); *Johnson*, 533 N.W.2d at 206 (same). In addition, there is no evidence of any conduct on the part of American Family that fostered expectations by the Franckes that they would be covered for claims such as those asserted by the Corrigans. *See LeMars Mut. Ins. Co.*, 574 N.W.2d at 311 (rejecting reasonable expectations doctrine in part due to lack of any evidence that the parties discussed the exclusion at issue so as to create a misunderstanding on the part of the insureds as to their coverage). Therefore, the reasonable expectations doctrine is not applicable.

### VI. *Summary and Disposition.*

The district court erred when it ruled American Family's homeowners policy provides coverage for the negligence claims asserted against Harold Francke. The undisputed facts show the bodily injury resulting from Harold's negligence was proximately caused by Mark Francke's violation of criminal law. This violation was not independent of the negligence claims against Harold as Mark's conduct was a required element in establishing Harold's

liability. Therefore, even though the policy is applied separately to Harold, it does not provide coverage. In addition, the reasonable expectations doctrine is not implicated by the criminal acts exclusion. For these reasons, we reverse the district court's summary judgment ruling in favor of the Corrigans and remand for entry of judgment in favor of American Family.

**REVERSED AND REMANDED.**