IMT INSURANCE COMPANY, Appellant,

v.

CRESTMOOR GOLF CLUB, d/b/a Crestmoor Country Club, Galen Krieger and Tabitha Lynnae Cottrell, Appellees.

No. 65/04–0904.

Supreme Court of Iowa.

Aug. 19, 2005.

Merrill C. Swartz and John B. Grier of Cartwright, Druker & Ryden, Marshalltown, for appellant.

Jeffrey L. Goodman and Gretchen R. Jensen of Goodman & Associates, P.C., West Des Moines, for appellee Cottrell.

No appearance by other appellees.

WIGGINS, Justice.

This appeal involves a petition for declaratory judgment filed by an insurance company requesting judgment that it did not have a duty to defend or indemnify under its policy of insurance. The district court found coverage to exist for the claims of negligent supervision and retention. Thus, the insurance company was required to defend or indemnify regarding those claims. The insurance company appeals contending various exclusions in the policy exclude coverage. We reverse the decision of the district court and remand the case to enter judgment in favor of the insurance company because the policy provides "[t]his insurance does not apply under any of the coverages to damages arising out of … the liability of the insured for the misconduct of … any other person," thereby excluding coverage for the claims of negligent supervision and retention.

## I. Background Facts and Proceedings.

Tabitha Lynnae Cottrell, a former female employee of Crestmoor Golf Club d/b/a Crestmoor Country Club (Crestmoor) claims her supervisor, Galen Krieger, made inappropriate sexual comments to her, touched her inappropriately, and sexually assaulted her. She later complained to Crestmoor personnel. She alleges when she returned to work at Crestmoor, "other managers ridiculed her complaint and engaged in other improper conduct toward her." She further claims Crestmoor constructively discharged her. As a result of the actions of her supervisor and Crestmoor, she claims she suffered humiliation, alienation, severe emotional distress, and economic harm.

She filed a complaint in the United States District Court against Crestmoor

and Krieger. She also filed a petition against the same defendants in state court, making the same allegations as she made in federal court. She alleged federal and state claims of sexual harassment and retaliation against Crestmoor. She additionally alleged claims of negligent supervision, negligent retention, tortious infliction of severe emotional distress, and a claim of respondeat superior against Crestmoor.

Relevant to this appeal, she alleged "Crestmoor knew, or should have known, that Krieger harassed and acted inappropriately toward other employees prior to Krieger's harassment and assault on [her]." Her allegation of negligent supervision claimed: "Crestmoor, its agents, board members, servants, and employees were negligent in failing to properly supervise and control the activities of Krieger." Her allegation of negligent retention claimed: "Crestmoor, its agents, board members, servants, and employees were negligent in retaining and failing to terminate Krieger." As a proximate cause of Crestmoor's negligent supervision and retention of Krieger, Cottrell asked for damages.

Crestmoor purchased a contract of insurance through IMT Insurance Company (IMT). This policy was in force at the time of the alleged incident. Although Crestmoor and Krieger timely requested IMT defend them from the claim, IMT denied the request asserting there was no coverage under the terms and provisions of the insurance contract existing between IMT and Crestmoor. IMT filed a petition for declaratory judgment requesting judgment that it did not have a duty to defend or indemnify Crestmoor or Krieger under its policy of insurance. IMT also named Cottrell as a defendant.

The parties submitted the coverage case to the court as a bench trial on stipulated facts. The parties stipulated the IMT in-surance policy did not provide coverage for the claims against Krieger, individually, or for the claims against Crestmoor based on theories other than negligent supervision and retention. Therefore, the issue before the district court was whether the IMT policy provided coverage for the negligent supervision and retention claims brought against Crestmoor. The district court determined insurance coverage existed for the negligent supervision and retention claims requiring IMT to defend and indemnify Crestmoor on those claims. IMT appeals.

## II. Issue.

Although IMT raises numerous issues on appeal, one is dispositive: whether the amendatory endorsement exclusion, which provides "[t]his insurance does not apply under any of the coverages to damages arising out of ... the liability of the insured for the misconduct of ... any other person," is applicable to this case.

## III. Scope of Review.

■ "A declaratory judgment action tried at law limits our review to correction of errors at law. We are bound by well-supported findings of fact, but are not bound by the legal conclusions of the district court." *Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 575 (Iowa 2004) (citing *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 651 (Iowa 2002)).

## IV. Analysis.

■ *General Principles of Insurance Contract Construction and Interpretation.* We have long adhered to the following principles regarding interpretation and construction of insurance contracts:

"The cardinal principle in the construction and interpretation of insurance policies is that the intent of the parties at

▉▉▉▉▉▉▉▉▉▉

the time the policy was sold must control. Except in cases of ambiguity, the intent of the parties is determined by the language of the policy. 'An ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one.' "

*Am. Family Mut. Ins. Co. v. Corrigan,* 697 N.W.2d 108, 111 (Iowa 2005) (quoting *LeMars Mut. Ins. Co. v. Joffer,* 574 N.W.2d 303, 307 (Iowa 1998)). "Where neither party offers any extrinsic evidence concerning the meaning of the policy language, the process of construing or interpreting the meaning of the words used is a matter of law for the court to decide." *Nationwide Mut. Ins. Co. v. Kelly,* 687 N.W.2d 272, 274 (Iowa 2004).

▉▉▉▉ Because insurance policies are adhesion contracts, we construe ambiguous terms in the insured's favor. *Cairns v. Grinnell Mut. Reins. Co.,* 398 N.W.2d 821, 824 (Iowa 1987); *see also Joffer,* 574 N.W.2d at 307 (stating, "[e]xclusions from coverage are construed strictly against the insurer"). "It is therefore incumbent upon an insurer to define clearly and explicitly any limitations or exclusions to coverage expressed by broad promises." *Cairns,* 398 N.W.2d at 824. Even in cases of doubt as to whether a claim is covered by the policy, the doubt must be resolved in the insured's favor. *N. Star Mut. Ins. Co. v. Holty,* 402 N.W.2d 452, 454 (Iowa 1987).

▉▉▉▉ *The Amendatory Endorsement Exclusion.* The policy of insurance issued to Crestmoor contains an amendatory endorsement that states:

This insurance does not apply under any of the coverages to damages arising out of:

    a.   misconduct by an insured, or

    b.   the liability of the insured for the misconduct of another insured or any other person.

(Emphasis omitted.) The policy endorsement includes a definition of "misconduct":

Misconduct as used in this endorsement means sexual misconduct, sexual molestation, sexual abuse, non-consensual sexual activity, or the physical or mental abuse of any person.

(Emphasis omitted.)

Cottrell claims she is entitled to damages because Krieger made inappropriate sexual comments to her, touched her inappropriately, and sexually assaulted her. These claims clearly constitute misconduct under the policy endorsement's definition. Paragraph "a" of the amendatory endorsement exclusion does not exclude coverage, however, because Cottrell is not alleging misconduct by Crestmoor. Her claims against Crestmoor are for negligent supervision and retention of Krieger, whose misconduct allegedly caused her damages.

▉▉▉▉ We hold under paragraph "b" of the amendatory endorsement exclusion, coverage for Crestmoor's negligent supervision and retention of Krieger is excluded. Crestmoor is liable for Cottrell's damages only if Krieger committed the underlying acts alleged by her. A necessary element of a claim for negligent supervision or retention is an underlying tort or wrongful act committed by the employee. *Kiesau v. Bantz,* 686 N.W.2d 164, 172 (Iowa 2004). In a claim of negligent retention and supervision, the cause of action arises from the employer's own tortious conduct. *Id.* at 173. "[T]he underlying tort or wrongful conduct is simply a link in the causal chain leading to compensable damages." *Id.*

▉▉▉▉ Paragraph "b" of the amendatory endorsement exclusion applies "to damages arising out of . . . the liability of the insured for the misconduct of . . . any

other person." We narrowly construe the phrase "damages arising out of" to mean only those injuries proximately caused by the liability of the insured. *Kalell v. Mut. Fire & Auto. Ins. Co.,* 471 N.W.2d 865, 868 (Iowa 1991); *accord Corrigan,* 697 N.W.2d at 112–13 (holding because the claim of negligent supervision alleged against one insured was not independent of the other insured's excluded wrongful acts, all theories of liability arose out of the wrongful conduct of the other insured and coverage was therefore excluded). The phrase "the liability of the insured" refers to the theories of recovery alleged in the claim of the injured party. In the present case, the theories of recovery are negligent supervision and retention. The phrase "for the misconduct of … any other person" means misconduct, as defined by the exclusion, caused by *any* person. In the present case, the misconduct is the inappropriate sexual comments, inappropriate touching, and sexual assault allegedly committed by Krieger, who qualifies as "any other person."

The claims of negligent supervision and retention, the basis of Crestmoor's liability, are dependent on the wrongful conduct of Krieger; consequently, the damages allegedly incurred by Cottrell arose out of the liability of Crestmoor and the wrongful conduct of Krieger. The alleged wrongful conduct of Krieger, the inappropriate sexual comments, inappropriate touching, and sexual assault, is misconduct under the amendatory exclusion. Therefore, the amendatory exclusion excludes coverage for Crestmoor, because Krieger qualifies as "any other person" under the exclusion.

■ Cottrell also argues that the severability-of-interests clause of the policy precludes us from holding paragraph "b" of the amendatory endorsement exclusion applies to her claim. She relies on our decision in *Shelly Funeral Home,* where

we held the severability-of-interests clause required us to apply the policy from the perspective of the insured seeking coverage. 642 N.W.2d at 654. The severability-of-interests clause in the IMT policy provides:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part or the first Named Insured, this insurance applies:
>
> > (a) As if each Named Insured were the only Named Insured; and
> >
> > (b) Separately to each insured against whom claim is made or "suit" is brought.

We recently rejected a similar argument. *Corrigan,* 697 N.W.2d at 117.

In *Corrigan,* Mark Francke seriously injured an eight-month-old child left in his care, while he operated a daycare business in the home of his father, Harold Francke. *Id.* at 110. Mark ultimately pled guilty to child endangerment. *Id.* The child's parents filed suit against Mark and Harold seeking damages for the injuries to their son. *Id.* They based their claims against Harold on his failure to warn them of the danger that Mark presented, Harold's failure to supervise, monitor, or otherwise take action to discover Mark was a danger, and for knowingly allowing dangers to exist at the daycare that created a substantial risk of harm to children on the premises. *Id.*

Harold's insurance policy contained a criminal acts exclusion. It provided, "We will not cover bodily injury or property damages arising out of … violation of any criminal law for which any insured is convicted." *Id.* at 112. The policy also contained a severability-of-interests clause similar to the clause contained in Crestmoor's policy. *Id.* at 115. After considering the argument that the severability-of-in-

terests clause required the company to provide coverage, we concluded:

> that even though the severability-of-interests clause requires that we apply the criminal acts exclusion from the viewpoint of Harold, the plain language of the exclusion mandates that we consider whether the claims made against Harold include as an element conduct by *any* insured that is a violation of the criminal law.

*Id.* at 117.

The same result is required in the present case. Even though we are required to apply the amendatory endorsement exclusion solely from the viewpoint of Crestmoor, the plain language of the exclusion requires that we consider whether the claims made against Crestmoor include as an element misconduct, as defined by the exclusion, by *any* other person. Therefore, the damages that Cottrell seeks to recover from Crestmoor arise out of Krieger's misconduct, as defined by the amendatory endorsement exclusion; thus, the policy does not provide coverage.

### V. Disposition.

We reverse the decision of the district court requiring IMT to defend and indemnify Crestmoor because the amendatory endorsement exclusion precludes coverage for Cottrell's claims for negligent supervision and retention against Crestmoor based on the inappropriate sexual comments, inappropriate touching, and sexual assault committed by Krieger. Accordingly, we remand the case to the district court to enter judgment in favor of IMT.

**REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except CADY, J., who dissents.

CADY, J. (dissenting).

I respectfully dissent. I disagree with the holding by the majority that damages in an action for negligent supervision and retention arise out of "the liability of the insured for the wrongful conduct of [the employee]." I would hold the exclusion in the insurance policy does not apply.

It is fundamental that a claim for negligent supervision and retention arises out of the employer's own conduct. *Kiesau v. Bantz,* 686 N.W.2d 164, 173 (Iowa 2004). The tort does not, in any way, impose liability on the employer for misconduct of the employee. *See* 27 Am.Jur.2d *Employment Relationship* § 390, at 842 (2004) ("The theory of direct liability [for negligent hiring, supervision, or retention] is completely separate from the respondeat superior theory of vicarious liability because the cause of action is premised on the wrongful conduct of the employer, such that the employer's negligence was the proximate cause of the plaintiff's injuries."); 30 C.J.S. *Employer–Employee* § 189, at 268 (1992) ("Aside from respondeat superior, or where the doctrine of respondeat superior is inapplicable, an employer may be liable to a third person for its negligence in the training and supervision of, its employees. The basis of the employer's liability for negligent supervision is direct, not vicarious, liability."); *see also* 7A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 103:31, at 103–74 (1997) (distinguishing between the insured's liability for negligent supervision and "legal responsibility for the third party's act (vicarious liability)"). Such a proposition ignores the fundamental premise of the tort and creates a legal fiction that serves only to permit an insurer to avoid its obligation to an insured under a contract of insurance.

Of course, we have said that the wrongful conduct of the employee is an element

of the tort of negligent supervision and retention. *Kiesau,* 686 N.W.2d at 172. We have also said that a plaintiff must prove the wrongful conduct of the employee was a cause of the damages. *Id.* at 173. However, neither of these propositions supports the conclusion that an employer in a negligent supervision and retention action is liable for the wrongful conduct of the employee.

Our observation in *Kiesau* that the wrongful conduct of the employee is an element of the tort of negligent supervision and retention does not mean that the tort imposes liability on the employer for the employee's wrongful conduct. Liability is imposed under the tort of negligent supervision and retention essentially for the failure of the employer to prevent the wrongful conduct by the employee. *See Godar v. Edwards,* 588 N.W.2d 701, 709 (Iowa 1999) (employer has a duty to use care in hiring, supervising, and retaining people who may present a threat of harm to others). The tort requires an employer to protect others from its employee's wrongful misconduct if the employee foreseeably posed an unreasonable risk of harm to others. *Id.* at 708–09. Thus, to impose liability on the employer, the plaintiff must necessarily show the presence of wrongful misconduct by the employee that should have been prevented. *See* 30 C.J.S. *Employer–Employee* § 186, at 262–63 ("In order to impose liability on an employer for negligent hiring of an employee, the plaintiff must first establish liability on the part of the employee by virtue of the employee's wrongful act against the plaintiff, and no liability attaches to the master by reason of hiring incompetent or otherwise unfit servants unless their incompetence or unfitness was the proximate cause of the injury."). Only in this way is the underlying misconduct a part of the tort. However, the wrongful conduct is not that part of the tort that gives rise to liability. Liabili-

ty arises from the failure of the employer to prevent the wrongful conduct. *See* 27 Am.Jur.2d *Employment Relationship* § 390, at 842 (noting that liability imposed in negligent hiring, supervision, and retention cases is direct liability for the employer's own conduct, not vicarious liability for the conduct of the employee); 30 C.J.S. *Employer–Employee* § 189, at 268 (same).

Our statement in *Kiesau* that a plaintiff must prove that the wrongful conduct of the employee was a cause of the plaintiff's damages also does not support the majority's position. *Kiesau* cited *Schoff v. Combined Insurance Co.,* 604 N.W.2d 43, 53 (Iowa 1999), for this proposition. *Kiesau,* 686 N.W.2d at 173 (citing *Schoff,* 604 N.W.2d at 53). However, *Schoff* merely indicated that an employer cannot be liable if the employee's conduct, the act the employer had a duty to prevent, was "not actionable against the employee." *Schoff,* 604 N.W.2d at 53. *Schoff* did not hold that in negligent hiring, supervision, and retention cases, liability is imposed on the employer for the misconduct of the employee, but merely said the conduct that the employer was obligated to prevent must be wrongful or tortious. *See id.* Thus, *Schoff* instructs that wrongfulness of the employee's conduct is necessary to make the employer's conduct actionable, and our decision had nothing to say about injecting proof of causation between the wrongful conduct of the employee and the damages, as an element of the tort. Instead, like any other tort, the torts of negligent hiring, supervision, and retention require the plaintiff to show the defendant's breach proximately caused the plaintiff's damages. *See* 30 C.J.S. *Employer–Employee* § 186, at 262–63 ("In order to impose liability on an employer for negligent hiring of an employee, the plaintiff must first establish liability on the part of the employee by virtue of the employee's wrongful act

against the plaintiff, and no liability attaches to the master by reason of hiring incompetent or otherwise unfit servants unless their incompetence or unfitness was the proximate cause of the injury."). Properly read, *Schoff* only holds that the employer's duty under the tort does not extend to protect others from conduct that was not wrongful or tortious.

Accordingly, the damages in an action for negligent hiring, supervision, or retention arise out of the liability of the employer for the misconduct of the employer, not the misconduct of the employee. As applied to the insurance policy at issue in this case, this means "liability of the insured" is not imposed "for the misconduct of [the employee]," and the exclusion does not apply.

I recognize we recently held in *American Family Mutual Insurance Co. v. Corrigan*, 697 N.W.2d 108, 114 (Iowa 2005), that injuries to a child inflicted by the son of an operator of an in-house day care in an action for negligent supervision against the homeowner-operator were excluded from coverage under the homeowner's insurance policy because such "damages [arose] out of . . . a violation of criminal law." I do not take issue with *Corrigan*, or the proposition that damages, detached from liability, arise from the acts of someone other than the defendant in an action for negligent supervision. However, the exclusion in this case does not deal with damages arising out of the misconduct of another, but those arising out of liability for misconduct of another. If the concept of liability was excluded from the insurance policy in this case, I would have no objection to the result reached by the majority. But liability was not excluded, and this is what makes all the difference. The insurance policy in this case is much more narrowly drawn than the policy in *Corri-*

*gan* and should be interpreted to recognize this important distinction.

The whole focus of the tort of negligent hiring, supervision, and retention is to make the employer liable based upon its individual and separate obligation to step in and prevent the wrongful acts, so that the employer cannot avoid responsibility by pointing the finger at the employee who committed the wrongful acts. Yet, the majority interprets the amendatory endorsement exclusion to allow the insurer to avoid responsibility for coverage for damages from the employer's act by pointing the finger at the employee. The insurance contract should not be interpreted to permit the tortfeasor's insurer to do what the law forbids the tortfeasor to do, without clear language to support that interpretation.