# IN THE SUPREME COURT OF IOWA

No. 16–1972

Filed February 1, 2019

**CITY OF WEST LIBERTY, IOWA,**

Appellant,

vs.

**EMPLOYERS MUTUAL CASUALTY COMPANY,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Muscatine County, Paul L. Macek, Judge.

A municipality seeks further review of a court of appeals decision affirming summary judgment in favor of an insurer. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Scott A. Ruksakiati and Thomas A. Vickers of Vanek, Vickers & Masini, P.C., Chicago, Illinois, and Daniel P. Kresowik, Jamie A. Bosten, and Amber J. Hardin (until withdrawal) of Stanley, Lande & Hunter, Muscatine, for appellant.

Sean M. O'Brien and Catherine M. Lucas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

**MANSFIELD, Justice.**

In a story that probably would not have been written by Beatrix Potter, a squirrel found its way onto an electrical transformer owned by a municipality, triggering an electrical arc that killed the squirrel and caused substantial damage to the municipality's property. The municipality sought coverage under its "all-risks" insurance policy. The insurer denied coverage based on the policy's electrical-currents exclusion, which excludes "loss caused by arcing or by electrical currents other than lightning." Disagreeing with this reading of the insurance policy, the municipality filed suit. The district court granted summary judgment to the insurer and the court of appeals affirmed.

On further review, we too affirm the district court. We find that the loss was indeed "caused by arcing." Therefore, it is excluded even though something else (i.e., the squirrel) triggered the arcing. This is not a situation where two independent causes, one covered and one excluded, may have contributed to the loss.

**I. Background Facts and Proceedings.**

The City of West Liberty owns and operates an electrical power plant. Employer's Mutual Casualty Company (EMC) insured West Liberty's power plant with coverage effective from April 1, 2014, through April 1, 2015.

On November 7, 2014, a squirrel climbed onto an outdoor electrical transformer at West Liberty's power plant. While still touching a grounded steel frame that supported an electrical cable, the squirrel came into contact with a bare cable clamp that was energized with 7200 volts of electricity. This contact created a conductive path between the high voltage clamp and the grounded frame. Once this path was established, the air between the energized and grounded surfaces became ionized and arcing resulted. The squirrel was killed, but more significantly the arcing

caused $213,524.76 worth of damage to West Liberty's transformer and other electrical equipment.

West Liberty provided timely notice of a claim to EMC for the loss. EMC, however, denied coverage based on an "Electrical Currents" exclusion in the policy. The policy at issue was an all-risks insurance policy, which in relevant part stated as follows:

> **PROPERTY COVERED**
>
> "We" cover the following property unless the property is excluded or subject to limitations.
>
> "We" cover direct physical loss to covered property at a "covered location" caused by a covered peril.
>
> . . . .
>
> **PERILS COVERED**
>
> "We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.
>
> . . . .
>
> **PERILS EXCLUDED**
>
> 1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.
>
> . . . .
>
> 2. "We" do not pay for loss or damage that is caused by or results from one or more of the following excluded causes or events:
>
> . . . .
>
> g. **Electrical Currents** — "We" do not pay for loss caused by arcing or by electrical currents other than lightning. But if arcing or electrical currents other than lightning result in fire, "we" cover the loss or damage caused by that fire.

On January 21, 2016, West Liberty filed a petition in the Iowa District Court for Muscatine County against EMC, seeking a declaratory judgment of coverage and damages. EMC answered on February 11, denying liability and asserting affirmative defenses. On July 20, West Liberty moved for partial summary judgment. On August 31, EMC resisted West Liberty's motion for partial summary judgment and filed a cross-motion seeking summary judgment.

West Liberty's theory of recovery under the policy evolved over time. Prior to litigation, West Liberty's city attorney invoked the fire exception to the electrical-currents exclusion. However, West Liberty later appeared to concede that no part of the $213,524.76 loss was due to fire. Instead, in its July 20 summary judgment memorandum, West Liberty argued a theory of concurrent causation based on *Amish Connection, Inc. v. State Farm Fire & Casualty Co. See Amish Connection*, 861 N.W.2d 230 (Iowa 2015). Thereafter, in its September 14 summary judgment reply, West Liberty landed on efficient proximate cause as its theory of choice, following principally *Qualls v. Farm Bureau Mutual Insurance Co. See Qualls*, 184 N.W.2d 710 (Iowa 1971).

The motions were heard on September 22. The court granted EMC's motion for summary judgment and denied West Liberty's motion. The district court found that the only event that caused damages was the electrical arc, noting the squirrel did no damage to West Liberty's property "such as gnawing on a power line or digging for nuts in a dangerous area." The court held,

> The Court cannot conclude that the "squirrel's actions" were a cause of the damages because the squirrel did not actually <u>do</u> anything to cause damages; it merely touched some things it should not have touched. The arc caused all of the damages. Had the squirrel done what it had done and the arc not occurred, there would be no damages. Because there are

not two different damage-causing events, the Court need not engage in an efficient proximate cause analysis. If an efficient proximate cause analysis was appropriate, the Court would find that the arcing was the dominant cause.

The district court ultimately concluded that because the electrical arc was the "sole cause" of damage and the policy excludes coverage for damages caused by electrical arcing, EMC was not required to cover West Liberty's claim. West Liberty appealed.

We transferred the case to the court of appeals. That court affirmed, likewise holding that West Liberty's loss fell within the electrical-currents exclusion. One member of the panel dissented. We granted West Liberty's application for further review.

## II. Standard of Review.

"We review a district court's summary judgment ruling that interprets an insurance policy for correction of errors at law." *Just v. Farmers Auto. Ins.*, 877 N.W.2d 467, 471 (Iowa 2016) (quoting *Amish Connection*, 861 N.W.2d at 235). "A grant of summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "Generally, interpretation of an insurance policy is a question of law." *Id.*

## III. Analysis.

We must determine whether the damage to West Liberty's transformer and electrical equipment was excluded from coverage by the electrical-currents exclusion in EMC's policy.

"Policy interpretation is always an issue for the court, unless we are required to rely upon extrinsic evidence or choose between reasonable inferences from extrinsic evidence." *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013). "The plain meaning of the insurance contract generally prevails." *Id.* "We will not strain the words or phrases

of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Just*, 877 N.W.2d at 471 (quoting *Amish Connection*, 861 N.W.2d at 236).

"We construe exclusions strictly against the insurer." *Amish Connection*, 861 N.W.2d at 236. Nevertheless, "we must enforce unambiguous exclusions as written." *Id.* (quoting *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 222 (Iowa 2007)). "An insurance policy is not ambiguous . . . just because the parties disagree as to the meaning of its terms." *Just*, 877 N.W.2d at 471 (quoting *Amish Connection*, 861 N.W.2d at 236). "Moreover, '[a]mbiguity is not present merely because the provision "could have been worded more clearly or precisely than it in fact was." ' " *Id.* (quoting *Amish Connection*, 861 N.W.2d at 236).

The "Electrical Currents" exclusion in the policy states,

"We" do not pay for loss caused by arcing or by electrical currents other than lightning. But if arcing or electrical currents other than lightning result in fire, "we" cover the loss or damage caused by that fire.

This language is straightforward. If arcing caused the loss, the loss is excluded, unless the arcing led to fire. Because arcing caused the loss here, and the arcing didn't lead to a fire, West Liberty's claim appears to be foreclosed by the express terms of the policy.

Nonetheless, West Liberty directs us to the efficient proximate cause doctrine. In effect, West Liberty maintains that *the squirrel* was an efficient proximate cause of its loss. The efficient proximate cause doctrine can apply when two or more causes, at least one covered by an insurance policy and at least one excluded, contribute to a loss. 7 Steven Plitt, et al., *Couch on Insurance 3d* § 101:45, at 101-84 to 101-85 (Revised ed. 2013) [hereafter *Couch on Insurance 3d*]. "When insurance policies lack . . . an

anticoncurrent-cause provision, we have held an accident that has two independent causes, one of which is covered and one excluded, is covered unless the excluded cause is the sole proximate cause of injury." *Amish Connection*, 861 N.W.2d at 241. West Liberty points out that there is an anticoncurrent-cause provision in numbered paragraph 1 of the "Perils Excluded," as quoted above, but not in numbered paragraph 2—the paragraph at issue here.[1]

*Qualls* illustrates the efficient proximate cause doctrine. *See Qualls*, 184 N.W.2d at 713. In *Qualls*, an insurance policy provided coverage for loss of livestock by "attack by dogs or wild animals." *Id.* at 712. A wild animal carrying the pseudorabies virus either bit Qualls's heifers or bit Qualls's hogs which then bit the heifers. *Id.* In any event, an original wild animal bite was the source of the pseudorabies disease. *Id.* Subsequently, fourteen of Qualls's heifers died of pseudorabies. *Id.* at 711–12. We found the loss was covered, reasoning,

> In insurance law it is generally understood that where the peril insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss.

*Id.* at 713. Importantly, though, *Qualls* did not involve an exclusion. *See id.*

Although *Qualls* didn't involve an exclusion, West Liberty relies on it here. Specifically, West Liberty argues that the squirrel—not the arcing—was the efficient proximate cause of its loss. Thus, it is irrelevant,

---

[1]An anticoncurrent-cause provision bars recovery based on an excluded event even if another event could be considered a concurrent cause of the same loss. *See Amish Connection*, 861 N.W.2d at 240 (noting that because of an anticoncurrent-cause provision, "the rain limitation controls regardless of whether the breaking drainpipe is considered a concurrent cause of the rainwater damage").

according to West Liberty, that the EMC policy excludes arcing from coverage.

We disagree. This is not a case of two *independent* causes, one of which was covered and one excluded. *See Amish Connection*, 861 N.W.2d at 241. "The efficient proximate cause doctrine is only applicable where the causes are independent." *First Specialty Ins. v. Am. Home Assur. Co.*, 558 F.3d 97, 105 (1st Cir. 2009); *see also Swenson v. State Farm Fire & Cas. Co.*, 891 F. Supp. 2d 1101, 1109 (D.S.D. 2012) ("One limit to the efficient proximate cause doctrine, however, is that it is only applied 'where two separate or distinct perils could have occurred independently of the other and caused damage.'" (quoting *Cain v. Fortis Ins.*, 694 N.W.2d 709, 714 (S.D. 2005))); 7 *Couch on Insurance 3d* § 101:45, at 101-85 ("Under any circumstances, in order for the efficient proximate cause doctrine to apply, there must be at least two potential causes of the subject loss."); 5 *New Appleman on Insurance Law Library Edition* § 44.03[9], at 44-22.1 (Jeffrey E. Thomas & Susan Lyons, eds., 2018) ("When the evidence shows the loss was in fact caused by only a single cause, even if susceptible to various characterizations, the efficient proximate cause analysis does not apply.").

The squirrel did not independently contribute to the $213,524.76 loss, i.e., other than through the arcing. As the district court put it, "The squirrel by itself did not cause any damage." Rather, the squirrel was inextricably tied to the arcing and was the immediate reason why the arcing happened.

Electrical arcing is always going to have *some* cause. Policy language excluding an event would be meaningless if an insured could avoid the exclusion simply by pointing out that the event itself had a cause.

In *Kish v. Insurance Company of North America*, the Washington Supreme Court found that the efficient proximate cause rule did not apply in such circumstances. *Kish*, 883 P.2d 308, 311–12 (Wash. 1994) (en banc). Several all-risks insurance policies were at issue, each containing a provision excluding "loss resulting directly or indirectly from" water damage. *Id.* at 309. Each policy defined water damage to include flooding, but none of the policies defined the term "flood." *Id.* at 310. When heavy and continuous rainfall washed over protective dikes, the plaintiffs' homes were damaged and rendered uninhabitable by ensuing flood waters. *Id.* at 309. The trial court denied cross motions for summary judgment, finding "rain" and "flood" to be distinct perils, leaving the question of the predominant cause to the jury. *Id.* at 310. The jury then found for the plaintiffs, finding "[r]ecord breaking rainfall" to be the efficient proximate cause of the loss. *Id.* at 310–11. The trial court held likewise in ruling on posttrial motions. *Id.* at 311.

On appeal, the insurance companies argued that the district court had erred in treating rain and flood as distinct perils and in sending the case to the jury to determine the efficient proximate cause as between them. *Id.* The Washington Supreme Court agreed with the insurers, holding,

> The efficient proximate cause rule applies only where two or more independent forces operate to cause the loss. "When, however, the evidence shows the loss was in fact occasioned by only a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application. An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss."

*Id.* (quoting *Chadwick v. Fire Ins. Exch.*, 21 Cal. Rptr. 2d 871, 874 (Ct. App. 1993)).

The court also found that applying the efficient proximate cause doctrine in these circumstances could have a potentially deleterious effect on insurance coverage:

> [A]ny application of the efficient proximate cause to the facts of this case would make it difficult for any insurer to ever exclude flood damage without excluding all rain damage. This would be an unfortunate occurrence for insureds because that could result in less coverage for insureds in this state.

*Id.* at 313. The Washington Supreme Court ultimately reversed the trial court and concluded "flood induced by rain" was the sole cause of damage, and "[f]lood is a peril within the clear language of the exclusion and precipitation typically induces flood at some point along the causal chain." *Id.*

Similarly, in *In re Katrina Canal Breaches Litigation*, plaintiffs sought to circumvent the flood exclusion in the defendants' insurance policies by arguing that the negligent design, construction, and maintenance of levees was the efficient proximate cause of their losses. *In re Katrina Canal Breaches*, 495 F.3d 191, 221–23 (5th Cir. 2007). The United States Court of Appeals for the Fifth Circuit rejected this argument:

> We agree with the district court's determination that we need not address whether insurers may contract around the efficient-proximate-cause rule under Louisiana law, nor need we address the operation of the efficient-proximate-cause rule itself in this case. The efficient-proximate-cause doctrine applies only where two or more distinct actions, events, or forces combined to create the loss. But here, on these pleadings, there are not two independent causes of the plaintiffs' damages at play; the only force that damaged the plaintiffs' properties was flood. To the extent that negligent design, construction, or maintenance of the levees contributed to the plaintiffs' losses, it was only one factor in bringing about the flood; the peril of negligence did not act, apart from flood, to bring about damage to the insureds' properties. Consequently, as the plaintiffs argue and as the district court held, the efficient-proximate-cause doctrine is inapplicable.

*Id.* at 222–23 (citations omitted).

Also relevant is a case decided by the District of Columbia Court of Appeals. In *Quadrangle Development Corporation v. Hartford Insurance Company*, electrical arcing caused substantial damage to Quadrangle's hotel switchboard, necessitating suspension of power for twelve hours for repairs, resulting in substantial losses due to business interruption. *Quadrangle*, 645 A.2d 1074, 1074, 1077 (D.C. 1994). One of the switchboard's safety devices known as a "pringle switch" malfunctioned and did not cut off the flow of electricity to stop the arcing. *Id.* at 1076. If the device had functioned properly, the damage to the switchboard would have been less severe and the time for repairs reduced. *Id.* Hartford denied coverage pursuant to the following provision in its insurance policy:

> We will not pay for loss or damage caused by or resulting from any of the following:
>
> a. Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.
>
> "But if loss or damage *by fire* results, we will pay for that resulting loss or damage."

*Id.* at 1075. The matter went to litigation, and a trial court determined Hartford was not liable under the terms of the policy. *Id.* at 1074. The District of Columbia Court of Appeals affirmed. *Id.* at 1078. Addressing proximate cause, the court held,

> Although the failure of the pringle switch allowed the arcing to continue longer than it otherwise would have, the pringle switch *did not produce the damage independently of the arcing*, and did not play a role that would undercut the proposition that arcing proximately caused the damage, as the concept of proximate cause is applied in insurance coverage disputes.

*Id.* at 1077 (emphasis added). Our case is analytically similar in that neither the squirrel here nor the pringle switch in *Quadrangle* "produce[d] . . . damage independently of the arcing." *Id.*

In the present case, the dissenting judge on the court of appeals panel cited and discussed *Continental Insurance Company v. Arkwright Mutual Insurance Company*, 102 F.3d 30 (1st Cir. 1996). However, unlike here, the loss in *Continental Insurance* had two independent causes. *See id.* at 31. There, flood waters entered the basement of a high-rise office building after a severe storm. *Id.* The flooding caused more than one million dollars in property damage to the building. *Id.* A portion of the building damage was direct flood damage; the rest resulted from electrical arcing that occurred when the flood waters contacted electrical switching panels. *Id.* The First Circuit ultimately held that flooding was "the dominant and efficient cause" of the damage to the electrical switching panels. *See id.* at 37–38.

Notably, the First Circuit distinguished another case that is factually more on point to today's case—*Home Insurance Company v. American Insurance Company. Id.* at 36–37. In *Home Insurance*, a property owner suffered loss entirely from electrical arcing. *Home Ins. v. Am. Ins.*, 537 N.Y.S.2d 516, 516 (App. Div. 1989). A steam-related moisture build-up was in turn the culprit behind the arcing. *Id.* Water saturation had led to a breakdown of insulation that enabled the arcing to occur. *Id.*

A dispute thus arose as to whether the loss was covered under American's policy that contained the following electrical current exclusion:

> Exclusions Applicable Whether Causing or Aggravating the Loss. We do not cover loss caused by, resulting from, contributing to or made worse by any of the following:
>
> a. Electric Current. We do not cover loss or damage caused by or resulting from artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires. But if loss or damage by any cause of loss not otherwise excluded results, we will pay that resulting loss or damage.

*Id.* at 516–17. Home claimed "that this exclusion is inapplicable to the facts of the . . . loss because the electrical arcing was precipitated by the escape of hot water and steam from the open drain line, which itself is a peril covered under the American policy." *Id.* at 517. The New York appellate court disagreed, stating, "[W]hile it is apparent that the introduction of moisture into the bus duct facilitated the electrical injuries in this case, it is also apparent that the losses themselves were not moisture injuries." *Id.* The court noted that the damages would not have occurred in absence of the electrical arcing and therefore were excluded under the plain and unambiguous language of the exclusion. *Id.*; *see also Finn v. Continental Ins.*, 267 Cal. Rptr. 22, 23–24 (Ct. App.1990) (finding an exclusion for "continuous or repeated seepage or leakage" applied notwithstanding the homeowner's argument that the efficient proximate cause of the leakage was a sudden break in the pipe, an included peril).

In *Central International Company v. Kemper National Insurance Companies*, the First Circuit criticized an earlier observation by the Massachusetts Appeals Court that recovery under an all-risks policy is available "where the insured risk [caused] . . . an excepted risk." *Cent. Int'l.*, 202 F.3d 372, 374 (1st Cir. 2000) (quoting *Standard Elec. Supply Co. v. Norfolk & Dedham Mut. Fire Ins.*, 307 N.E.2d 11, 13 (Mass. App. Ct. 1973)). The First Circuit observed,

> The smattering of authority for this "well-established" principle is not very impressive, and the cases usually—but perhaps not always—can be better explained as a limiting construction of the exclusion. The attempt to give priority to the initial covered cause in the "train of events" over the excluded consequence is doubtful in principle even where the covered risk is narrowly defined (*e.g.,* fire), but it becomes absurd where the initial coverage is all risk, since every excluded harm has some cause.

*Id.* at 374–75 (citations omitted).

West Liberty argues that EMC could have avoided any dispute by placing the electrical-currents exclusion under numbered paragraph 1, thereby making it subject to the anticoncurrent-cause provision. Again, that paragraph read,

> 1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

But as in *Kish*, this approach would lead to less coverage and would be "unfortunate" for insureds. *Kish*, 883 P.2d at 313. In the event a loss occurred due to a *combination* of two or more independent causes, at least one of which was excluded, there would be no coverage for *any* of the loss. *See Walnut Creek Townhome Ass'n v. Depositors Ins.*, 913 N.W.2d 80, 94 (Iowa 2018) (discussing the effect of anticoncurrent-cause provisions).

It is also worth noting that the electrical-currents exclusion has an express carve-out where "lightning" is the source of the electrical currents or arcing. In that event, the exclusion does not apply. But if an insured could always avoid the electrical-currents exclusion by arguing that something else was the efficient proximate cause of the electrical current or arcing, the lightning exception would seem unnecessary. *See Boelman*, 826 N.W.2d at 502 ("We will not interpret an insurance policy to render any part superfluous, unless doing so is reasonable and necessary to preserve the structure and format of the provision.").

### IV. Conclusion.

For the foregoing reasons, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**