# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3341

_____

Joseph J. Henderson & Sons, Inc.

*Plaintiff - Appellee*

v.

Travelers Property Casualty Insurance Company of America

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: November 12, 2019
Filed: April 20, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges

_____

WOLLMAN, Circuit Judge.

The City of Iowa City, Iowa (the City) hired general contractor Joseph J. Henderson & Sons, Incorporated (Henderson) to design and install a bio-solids building as a part of a project meant to improve and expand the City's wastewater treatment facility. Panels on the building's roof were damaged during a windstorm. Henderson filed a claim with Travelers Property Casualty Insurance Company of

America (Travelers), asserting that Travelers was required to cover the roof's damage pursuant to the City's builder's risk insurance policy (the Policy) with Travelers. Travelers responded that it was not liable under the Policy because the damage was caused in whole or in part by Henderson's faulty workmanship. Henderson's claim having been denied, the case ultimately went to trial, during which a jury found for Henderson and awarded $581,235.65 in damages, which included a $142,927.43 award for fees related to the engineering investigation regarding the cause of the failure. Travelers appeals the district court's[1] denial of its motion for judgment as a matter of law and, in the alternative, moves for a new trial or remittitur. We affirm.

I.

The Policy identifies Henderson as a "named insured" and generally provides that Travelers will "pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss." The Policy defines "Covered Causes of Loss" to include "RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE except those causes of loss listed in the Exclusions." Travelers does not contest that a windstorm constitutes a risk of direct physical loss or damage.

The Policy contains three exclusions, two of which are relevant here: the "external event" exclusion and "faulty workmanship" exclusion. The external event exclusion provides that Travelers "will not pay for loss or damage caused directly or indirectly by" governmental action, nuclear hazard, war and military action, ordinance of law, collapse or imminent collapse from flood or earth movement, or fungus and rot. The policy makes clear that any "loss or damage" stemming from these events "is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." Under Iowa law, this

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

exclusionary language aimed at concurrent causes is referred to as an "anticoncurrent-cause provision." See W. Liberty v. Emp'rs Mut. Cas. Co., 922 N.W.2d 876, 880 n.1 (Iowa 2019) ("An anticoncurrent-cause provision bars recovery based on an excluded event even if another event could be considered a concurrent cause of the same loss."). The faulty workmanship exclusion states that Travelers "will not pay for loss or damage caused by or resulting from . . . [o]mission in, or faulty, inadequate or defective: (1) [p]lanning, zoning, development, surveying, siting, design or specifications; or (2) [m]aterials, workmanship or maintenance." Importantly, this exclusion contains no language akin to the anticoncurrent-cause provision found in the external event exclusion. To the contrary, the policy states that the faulty workmanship exclusion does not apply "if loss or damage by a Covered Cause of Loss results."

Henderson, Iowa City, and Travelers each hired different engineering firms to determine why certain roof panels of the bio-solids building were damaged. The engineering firms arrived at differing conclusions that the wind, faulty workmanship, or potentially some combination of the two caused that damage. When the case proceeded to trial, the jury heard conflicting evidence regarding the respective roles that wind and faulty workmanship played in damaging the building's roof. Travelers moved for judgment as a matter of law after Henderson's case-in-chief and its own, asserting that no evidence had been presented to show that the windstorm could have caused damage absent the construction defects. The district court denied both motions and submitted the case to the jury. After the jury found in favor of Henderson, Travelers renewed its motion for judgment as a matter of law and, in the alternative, moved for a new trial or remittitur, see Fed. R. Civ. P. 50(b), 59, which, as mentioned above, the district court denied.

II.

We review *de novo* the denial of a motion for judgment as a matter of law, "reviewing the sufficiency of the evidence to support the jury's verdict . . . in a light

most favorable to the prevailing party, [and] affirming unless no reasonable juror could have reached the same conclusion." Structural Polymer Grp., Ltd. v. Zoltek Corp., 543 F.3d 987, 991 (8th Cir. 2008). We review the denial of a motion for a new trial for an abuse of discretion. Id. The parties agree that Iowa law governs this diversity action. Accordingly, "we must endeavor to decide the case as the Iowa Supreme Court would decide it" and "are bound by the decisions of the Iowa Supreme Court." Doe v. Baxter Healthcare Corp., 380 F.3d 399, 407 (8th Cir. 2004).

*A. Denial of Motion for Judgment as a Matter of Law*

Travelers advances several theories why the Policy's faulty workmanship exclusion relieves it of liability as a matter of law. Under Iowa law, "[t]o determine if an insurance policy affords coverage under a particular set of circumstances, [courts] generally look first to the insuring agreement, then to the exclusions and the exceptions to the exclusions." Nat'l Sur. Corp. v. Westlake Invs., LLC, 880 N.W.2d 724, 739 (Iowa 2016). The insurer has a "duty to define any limitations or exclusionary clauses in clear and explicit terms." Postell v. Am. Family Mut. Ins. Co., 823 N.W.2d 35, 41 (Iowa 2012) (quoting Allied Mut. Ins. Co. v. Costello, 557 N.W.2d 284, 286 (Iowa 1996)). Consequently, courts are obligated to strictly construe policy exclusions against the insurer. See id. at 41.

Travelers first argues that the faulty workmanship exclusion contains an anticoncurrent-cause provision, which, as earlier discussed, bars recovery when the loss is caused by both an excluded event (faulty workmanship) and an event that would otherwise be covered under the policy (windstorm). See West Liberty, 922 N.W.2d at 880 n.1. We conclude that the faulty workmanship exclusion does not include an anticoncurrent-cause provision.

The faulty workmanship exclusion states that Travelers "will not pay for loss or damage caused by or resulting from [faulty workmanship]," and immediately

clarifies that "if loss or damage by a Covered Cause of Loss [e.g., a windstorm] results, [Travelers] will pay for that resulting loss or damage." We construe this language to mean that Travelers will not pay for damage caused by faulty workmanship, except when the damage is caused in part by a covered event, such as a windstorm. Cf. Tento Int'l, Inc. v. State Farm Fire & Cas. Co., 222 F.3d 660, 663 (9th Cir. 2000) (holding that similar contract language was a "resulting-loss provision"). This construction is especially appropriate when the faulty workmanship exclusion is viewed in context. Unlike the faulty workmanship exclusion, the external event exclusion includes an explicit anticoncurrent-cause provision, stating that Travelers "will not pay for loss or damage caused directly or indirectly by [external events] . . . *regardless of any other cause or event that contributes concurrently* or in any sequence to the loss or damage." J.A. 2068 (emphasis added). If Travelers intended that the faulty workmanship exclusion applied regardless of any concurrent causes, it could have adopted express language similar to the external event exclusion. Iowa courts "'will not write a new contract of insurance' for the parties" when an insurance policy and its exclusions are clear. Boelman v. Grinnell Mut. Reins. Co., 826 N.W.2d 494, 502 (Iowa 2013) (quoting Thomas v. Progressive Cas. Ins. Co., 749 N.W.2d 678, 682 (Iowa 2008)). We decline to do so here. See also Kalell v. Mut. Fire & Auto. Ins. Co., 471 N.W.2d 865, 868 (Iowa 1991) ("If [insurer] intended to exclude coverage of an incident simply because it involved [an excluded cause of loss], it was incumbent on it to say so in its policy.").

Travelers relies heavily on Amish Connection, Inc. v. State Farm Fire & Casualty Co., 861 N.W.2d 230 (Iowa 2015), which we conclude does not apply to the facts of this case. There, a corroded drainpipe burst during a rainstorm, resulting in a claim by the insured that the water damage was covered by its insurance policy. The policy contained two exclusions, under which the insurer was not liable if either applied. Id. at 240 ("We insure for accidental direct physical loss to property covered under this policy unless the loss is: 1. limited in the PROPERTY SUBJECT TO LIMITATIONS section; *or* 2. excluded in the LOSSES NOT INSURED section"

(emphasis in original)).  The first exclusion stated that the insurer was not liable for losses "caused by rain," except in certain circumstances not relevant here.  Id. at 233.  The second exclusion provided that the insurer was not liable if the damage was caused by certain events—like "rust" and "corrosion"—but included a clause stating that the exclusion did not apply if the damage was caused by "Specified Causes of Loss," which included "water damage" from the "breaking or cracking of any part of a system . . . containing water."  Id. at 234.  The insured argued, in part, that even if the first exclusion applied since the corroded drainpipe burst during a rainstorm, the policy nevertheless covered the resulting damage because the insured's damage was covered under the exception to the second exclusion: the insured suffered "water damage" due to the "breaking . . . of . . . a system . . . containing water," or the drainpipe.  Id. at 239.  The Iowa Supreme Court rejected this argument, noting that the first exclusion "effectively ha[d] an anticoncurrent-cause provision," since, unlike the second exclusion, it contained no express exception for "Specified Causes of Loss," and only one of the exclusions had to apply to preclude coverage.  Id. at 239-240 (stating that the exception to the second exclusion does "not create coverage for rain damage because an exception to an exclusion does not create coverage that otherwise is lacking. . . . Unlike the [second exclusion], the [first exclusion pertaining to rain] contains no exception for 'Specified Causes of Loss.'").  Thus, "the rain limitation control[led] regardless of whether the breaking drainpipe is considered a concurrent cause of the rainwater damage."  Id. at 240.  Here, unlike in Amish Connection, the faulty workmanship exclusion does contain an express exception for damages "if loss or damage by a Covered Cause of Loss [e.g., a windstorm] results."  The faulty workmanship exclusion thus contains no anticoncurrent-cause provision, and we decline to read it as though it does.

Travelers next argues that even if the faulty workmanship exclusion lacks an anticoncurrent-cause provision, coverage is nevertheless excluded because faulty workmanship was the sole proximate cause or the efficient proximate cause of loss.[2] "When insurance policies lack . . . an anticoncurrent-cause provision, we have held an accident that has two independent causes, one of which is covered and one excluded, is covered unless the excluded cause is the sole proximate cause of injury." Id. at 241 (citing Grinnell Mut. Reins. Co. v. Emp'rs Mut. Cas. Co., 494 N.W.2d 690, 693-94 (Iowa 1993)). The Iowa Supreme Court explained:

> If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy. The insurance carrier has the burden of proof as to whether the injury was caused solely by a proximate cause which is excluded under the policy.

Kalell, 471 N.W.2d at 868 (internal quotation omitted).

Travelers first argues that the windstorm was not an independent or "proximate" cause of the damage at issue because the windstorm could not, on its own, have caused the full extent of the damage. According to Travelers, the

---

[2]See Amish Connection, 861 N.W.2d at 244-46 (Hecht, J., dissenting) (explaining different concurrent causation tests under Iowa law). Although Travelers makes a passing reference to the efficient proximate cause test, we need not determine whether the sole proximate cause test or efficient proximate cause test governs. Travelers arguments remain the same under each: "[T]here are not two independent causes of loss because the wind did not, and could not have independently caused any damage whatsoever." Appellant Br. at 32. Travelers affirms that "[i]n either case," referring to whether the faulty workmanship is the sole proximate cause or the efficient proximate cause, "the loss is not covered." Id. at 35.

building's faulty workmanship was necessarily the cause of the magnitude of the resulting damage. But the Iowa Supreme Court has rejected a similar argument. In Kalell, for example, it determined that concurrent causes were independent causes even though each cause did not independently cause the relevant harm. 471 N.W.2d at 868. There, when the insured tied a rope to his truck to remove a dead limb from a tree, the limb struck and injured the plaintiff. Id. It was clear that neither the rope nor the truck, on its own, could have caused the injury. Both were required to facilitate the process that resulted in the harm. Nevertheless, the Iowa Supreme Court held that the use of the truck and the use of the rope were independent causes of plaintiff's injury. Id. The Court noted that the use of the rope "could be found to be an independent act of negligence and one which is covered by the policy." Id.; see also Grinnell, 494 N.W.2d at 694 (Iowa 1993) (holding that negligent supervision of children "could have been determined to be[] a proximate cause" of the child's injuries such that injuries were "not caused solely by vehicle-related negligence"). Here, likewise, the jury found that the windstorm was an independent cause of the harm even if it could not have caused the full extent of the harm on its own.

Travelers next argues that the windstorm was not an independent cause of the harm because its effects were necessarily dependent on the faulty workmanship. See Appellant's Br. at 27 ("[T]he recipe for damage required the ingredient of Henderson's faulty work."). Here, too, we reject the argument that the extent of the damage caused by the windstorm was dependent on the faulty workmanship. The cases cited by Travelers in support are inapposite. In City of West Liberty v. Employers Mutual Casualty Co., "a squirrel found its way onto an electrical transformer owned by a municipality triggering an electrical arc" which damaged the municipality's property. 922 N.W.2d at 877. Although it was undisputed that the insurance policy at issue covered harm proximately caused by a squirrel, the policy excluded coverage for any "loss caused by arcing." Id. at 878. The Iowa Supreme Court ultimately found that the exclusion applied, because the squirrel was not an "independent cause" of the harm, see id. at 880-81, since its actions caused harm

only "through the arcing," which was an excluded cause under the policy and which did not directly and "by itself" cause the harm. Id. at 880. The arcing alone was the immediate cause of harm, even if the arcing itself was caused by the squirrel. See id. ("[T]he squirrel was inextricably tied to the arcing and was the immediate reason why the arcing happened."). Here, by contrast, the windstorm and faulty workmanship operated in tandem to cause the resulting damage, and thus the windstorm and the faulty workmanship were "two independent causes" that "contributed to the loss," unlike the situation in West Liberty, see id. at 877.

Travelers's reliance on American Family Mutual Insurance Co. v. Corrigan fails for a similar reason. 697 N.W.2d 108 (Iowa 2005). There, "Mark Francke operated a daycare business in the home of his father, Harold Francke." Id. at 110. Mark admitted that he had caused severe injuries to a child that attended the daycare and pleaded guilty to the crime of child endangerment. See id. The child's parents sued Mark for "negligent, reckless, and/or intentional conduct resulting in serious harm to [their child]." Id. They sued Harold for negligent supervision, for failing to warn of the dangers Mark posed, and for knowingly allowing on his premises dangers that presented substantial risk of harm to children. See id. Harold's insurer brought a declaratory judgment action, asserting that it was not liable for the injuries suffered by the child, relying on the policy's criminal acts exclusion, which precluded coverage for "bodily injury . . . arising out of . . . violation of any criminal law for which any insured is convicted." Id. at 112. The child's parents argued that the criminal acts exclusion did not apply to their claims against Harold, who was sued only for negligent supervision. See id. at 112 ("They argue there were two causes of [their child's] injuries—Mark's conduct and Harold's negligence. . . . [T]he mere fact that the injury arising from Mark's intentional acts is excluded does not mean the same injury also caused by Harold's negligent acts is excluded."). The Iowa Supreme Court disagreed, stating that "the negligent acts of Harold were not independent of Mark's criminal acts." Id. at 115. See id. at 112 ("The present case is clearly distinguishable [from Kalell] because the acts alleged against Harold are not

independent of the excluded acts of Mark.") "[T]heories of liability asserted against Harold require as an element proof of Mark's conduct in inflicting the injuries," it reasoned. Moreover, "[b]ecause Mark's acts must be established to prove that Harold's negligence was a proximate cause of [the child's] injuries, none of the claims of negligence alleged against Harold are independent of the wrongful conduct of Mark . . . .").  Here, by contrast, the destructive force of the windstorm existed notwithstanding the existence of any faulty workmanship on Henderson's part. Crucially, the "theor[y] of liability asserted against" Travelers relating to the windstorm does not "require as an element proof" of the role of faulty workmanship in "inflicting the [harm]." Id. at 112. Thus, unlike in Corrigan, the causal events at issue here exist independently.

Travelers further argues that no reasonable juror could have found that faulty workmanship was not the sole proximate cause of the damages at issue. Under Iowa law, "save in exceptional cases . . . proximate cause is [a question] to be determined by the jury and not one to be dealt with as a question of law by the Court." Walton v. Eckhart, 354 F.2d 35, 38 (8th Cir. 1965) (applying Iowa law); see also Clinkscales v. Nelson Sec., Inc., 697 N.W.2d 836, 841 (Iowa 2005) ("questions of . . . proximate cause are ordinarily for the jury—'only in exceptional cases' should they be decided as a matter of law" (citing Iowa R. App. P. 6.14(6)(j))).  Henderson presented evidence at trial that the windstorm was a "catalyst" for the damage to the roof. Accordingly, we conclude that, based on the evidence presented, a reasonable juror could have found that faulty workmanship was not the sole proximate cause of the loss.

*B. Motion for a New Trial or Remittitur*

Travelers argues that it is entitled to a new trial because the district court erred in instructing the jury on the definition of "sole proximate cause." As a threshold matter, when a party does not preserve a claim related to jury instructions, "this court

reviews the district court's instructions for plain error." Lopez v. Tyson Foods, Inc., 690 F.3d 869, 876 (8th Cir. 2012). Travelers did not state the grounds for its objection to the instruction during trial, and so we review only for plain error. See id. at 876 (8th Cir. 2012) (stating that objections to jury instructions "must be specific, precise enough to allow the district court to address any problems and avoid a retrial. A general objection to a jury instruction, even when it encompasses a specific objection is insufficient." (quoting Bauer v. Curators of Univ. of Mo., 680 F.3d 1043, 1045 (8th Cir. 2012))); Fed. R. Civ. P. 51(c)(1) (requiring that objections to jury instructions state "distinctly the matter objected to and the grounds for the objection."). Plain error exists only when:

> (1) the district court deviates from a legal rule; (2) the error is clear under current law; and, (3) the error affects substantial rights, which ordinarily means that the error affects the outcome of the proceedings. Plain error will not be corrected unless (4) it seriously affects the integrity, fairness, or public reputation of judicial proceedings.

Id., 690 F.3d at 877 (quoting Bauer, 680 F.3d at 1045).

We find no plain error in the district court's instruction to the jury on the issue of proximate cause. The instruction stated:

> When a loss is caused by a combination of covered and excluded risks, the loss is covered unless the excluded cause is the sole "proximate cause" of the loss. An event is considered a proximate cause of a loss if the event sets in motion other causes which, through an unbroken sequence and combination, result in the loss. There can be more than one proximate cause.

This instruction is consistent with the Iowa Supreme Court's prior construction of "proximate cause" in insurance liability cases. See, e.g., Qualls v. Farm Bureau Mut. Ins. Co., 184 N.W.2d 710, 713 (Iowa 1971) (explaining that a proximate cause "sets

-11-

other causes in motion which, in an unbroken sequence and connection . . . produces the result for which recovery is sought"); Kalell, 471 N.W.2d at 868 ("Under Iowa law, [m]ore than one proximate cause may exist."). Regardless of whether the district court erred in giving the instruction, Travelers has not shown that the error affected the outcome of the proceedings.

Travelers also contends that remittitur is appropriate, arguing that the district court awarded grossly excessive awards for the cost of the roof replacement and engineering assessment fees. Remittitur is only "appropriate where the verdict is so grossly excessive as to shock the judicial conscience." Bennett v. Riceland Foods, Inc., 721 F.3d 546, 553 (8th Cir. 2013). "A new trial or remittitur is not appropriate 'merely because [we] may have arrived at a different amount from the jury's award.'" Lincoln Composites, Inc. v. Firetrace USA, LLC, 825 F.3d 453, 459 (8th Cir. 2016) (quoting Bennett, 721 F.3d at 553). We conclude that the total award, however generous it may have been, is not so "excessive as to shock the judicial conscience."

The judgment is affirmed.

_____