# IN THE COURT OF APPEALS OF IOWA

No. 19-0207
Filed April 29, 2020


**UNKRICH AG, INC., MONTY UNKRICH, and STACY UNKRICH,**
    Plaintiffs-Appellees,

**vs.**

**FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY,**
    Defendant-Appellant.
_____


    Appeal from the Iowa District Court for Jefferson County, Crystal S. Cronk,

Judge.


    An insurance company appeals the district court's finding a breach of the

insurance contract. **AFFIRMED IN PART, REVERSED IN PART, AND**

**REMANDED.**



    James W. Russell and Tucker F. Levis of Parker & Geadelmann, P.L.L.C.,

West Des Moines, for appellant.

    Douglas A. Fulton of Brick Gentry, P.C., West Des Moines, for appellees.



    Heard by Bower, C.J., and Greer and Ahlers, JJ.

**BOWER, Chief Judge.**

Farm Bureau Property & Casualty Insurance Company (Farm Bureau) appeals a district court judgment in favor of Unkrich Ag, Inc., Monty Unkrich, and Stacy Unkrich (collectively "the Unkriches"). We find substantial evidence supports a determination that farm equipment was damaged by a power surge at the Unkriches' property but does not support a finding the electrical systems of two buildings were damaged by a power surge. Consequently, the court's award for loss-of-income and damages requires recalculation. We affirm in part, reverse in part, and remand for a recalculation of damages.

### I. Background Facts & Proceedings

The Unkriches own a farming operation that includes row-crop farming, cattle, and hogs. The Unkriches own several hog-confinement buildings of varying ages at multiple locations in southeast Iowa. The hog-confinement buildings are not on a regular maintenance program, and things are repaired "as needed." The Unkriches have insurance coverage through Farm Bureau.

On June 20, 2015, a severe thunderstorm caused power outages in the counties where the Unkriches' hog operations are located. At one location with two confinement buildings, the back-up generator initially started and was functioning, but then failed. Once on site, Monty was able to restart the generator. While the power was out, most of the hogs suffocated due to the lack of ventilation in the buildings.[1]

---

[1] The hogs were owned by a third party and not covered or claimed under the Unkriches' insurance policy.

After the generator restarted, the electrical systems resumed normal function and did not exhibit problems. Following the storm, the Unkriches noticed some fan motors, washing machines, dryers, an air conditioner, and refrigerators began to fail. New fan motors failed within a short time. The Unkriches' electrician, Center Point Electric, refused to warranty any new motors unless the buildings were rewired. The Unkriches made plans to rewire the buildings.

In September, the Unkriches filed a claim with Farm Bureau asserting a lightning strike damaged the electrical systems. Farm Bureau hired an electrical engineer, Ghattas Bitar, to examine the system and determine the cause of the claim. Bitar visited the Unkriches' property on September 15 and November 18, and produced a report after each visit. At the first visit, Bitar was primarily looking for evidence of lightning damage. The first report ruled out lightning as a cause of the damages; the inspection included some testing of wiring insulation, confirming there were no signs of lightning damage. In the first report, Bitar concluded,

> Based on my physical examination of the insured's electrical panels and facility, and the inspection of controllers, light fixtures, motors and the information provided by the insured party and the utility company, with the insulation testing provided by an independent company, it is my opinion that the malfunctions reported by the insured party were the result of a power surge event and power fluctuation that resulted from high wind damages confirmed by the utility research. . . .
> This opinion is also confirmed by the gradual failure of the insured's equipment from the date of loss till [sic] the date of my inspection. . . .
> The insured's environment is . . . wet humid and corrosive due to the hydrogen sulfide gas in the manure. This environment exposure will lead to failures that are consistent with the reported failures and similar patterns as found in the physical examination of the claimed equipment.

During the follow-up visit, and included in the second report, Bitar noted the damaged equipment and that the tests of the buildings' wiring did not identify

evidence or signs of a high-voltage surge event. He expressly concluded, "None of the observed or reported damages are the result of lightning damage." In both reports, Bitar noted clear evidence of corrosion and deterioration in the electrical systems and equipment. Farm Bureau determined the electrical system problems were routine and related to the aging electrical systems and, therefore, did not establish a compensable loss.[2] Farm Bureau denied the Unkriches' claim.

The Unkriches replaced the electrical systems in both buildings at a cost of $171,246.99. They reported a loss of income during the repairs of $172,134.25—consisting of six months of lost rent at $27,000 per month, and one month's rent reduction of $10,134.25.

On March 24, 2017, the Unkriches filed suit against Farm Bureau, claiming breach of contract. Farm Bureau filed two motions in limine: one to exclude causation testimony by the electrician, and one to exclude all evidence of the Unkriches' claim for loss-of-income damages.

The matter was tried to the court on August 21, 2018. The court heard testimony from Monty and Stacy Unkrich, electrician Randy DeVries, Bitar, and Farm Bureau property claims manager Ron Rydberg. Monty testified about the much-higher rate of fan motor failure and appliance failure following the storm. DeVries testified he never figured out what was causing the outages but recommended a rewiring of the buildings due to the pattern of motor outages observed. DeVries agreed the electrical system in the buildings could be considered older and that corrosion develops over time. He qualified this by stating

---

[2] The Unkriches' buildings and electrical systems were eighteen years old.

the age of the system did not necessarily mean the electrical system needs "serious remodeling," stating, "We've got barns we wired twenty years ago and never been back since." He also agreed corrosion could cause problems with functionality of the system.

Bitar's testimony described the damage he would expect to see if the equipment was damaged by lightning or a power surge and stated he did not see evidence of either at the Unkrich facilities. Bitar further testified that equipment affected by a power surge would fail after the surge, not gradually over a period of several weeks. Bitar attributed the damage exclusively to wear and tear and corrosion but admitted the testing on the wiring did not reach any definitive conclusion as to the cause of the damage. When questioned why he needed to re-investigate and provide a second report, Bitar responded he was "asked specifically to look into some issues of some motors that were replaced. Evaluate an air conditioner condensing unit that had the trip breaker. Evaluate the wiring in general, because it was insisted that the wiring of the building needs to be replaced."

The court found a power surge caused all the damage to the Unkriches' property, ruling in their favor. The court awarded the Unkriches $171,246.99 in property damages and $175,500.00 for loss-of-income damages plus interest and costs.

Farm Bureau filed a motion to reconsider, which the court summarily denied. The motion to reconsider had included a request for a ruling on Farm Bureau's motion in limine regarding the Unkriches' loss of income. Farm Bureau appeals.

## II. Relevant Policy Provisions

The Unkriches' property was covered by a Farm Bureau Member's Choice policy. The declarations page of the policy pertaining to the confinement buildings specifies they are insured for replacement cost and subject to special, rather than named, causes of loss. The general coverage limits are in excess of the amount at issue in this case.

The hog operations the Unkriches allege are damaged generally fall within the "Property" section of the policy. The buildings themselves fall under the "Garages, Outbuildings, and Other Structures" module. The equipment within the buildings fall under a "Farm/Ranch Equipment Breakdown" endorsement. The Unkriches' policy also included a "Farm/Ranch Operations Interruption" endorsement. Each building's coverage limit for "Farm/Ranch Operations Interruption" is $15,000 with a $2500 deductible.

The relevant policy provisions include:

### PROPERTY SECTION

**Covered Causes Of Loss**
**Special Causes of Loss**

When the Declarations indicate coverage for Special Causes of Loss, coverage is provided for accidental direct physical loss except as excluded.

**Additional Exclusions**
**Power Failure**

There is no coverage for loss "arising out of" the failure of power or other utility service if the failure takes place off the "insured premises."

If power failure results in a Covered Cause of Loss, We will pay for the loss or damage "caused by" that Covered Cause of Loss.

**Weather Conditions**

There is no coverage for loss "arising out of" weather conditions. This exclusion applies only if weather conditions contribute in any way with a cause or event subject to the Exclusions

in the General Section and Additional Exclusions in the Property Section . . .

### Special Causes of Loss Index

When the Declarations indicate coverage for Special Causes of Loss, we insure your property as described in the Declaration for accidental direct physical loss except as excluded under the exceptions and limitations outlined below. The coverage provided is subject to the General Section Exclusions, the Additional Exclusions in this Property Section, and any applicable property module exclusions.

### Exceptions and Limitations
### Gradual or Sudden Loss

A. There is no coverage for loss "arising out of":[3]

1. Wear and tear; marring, scratching or deterioration;

. . . .

8. Rust, electrolysis or other corrosion . . . ;

. . . .

E. If loss or damage not precluded by any other provision in this policy results, we will pay for that resulting loss or damage.

### Electrical Current

There is no coverage for loss "arising out of" artificially generated electric current, including electric arcing, that damages electrical devices, appliances, or wires.

### GARAGES, OUTBUILDINGS AND OTHER STRUCTURES MODULE
### Garages, Outbuildings And Other Structures Coverage

A. We cover garages, outbuildings and other structures described in the Declarations with a specific limit of insurance for the covered causes of loss indicated in the Declarations.

B. We cover attachments or additions to insured garages, outbuildings or other structures including permanent fixtures in or on them, if you own them and they are not insured separately in this policy . . . .

### FARM/RANCH EQUIPMENT BREAKDOWN[4]
### Additional Definitions

"Equipment breakdown" as used herein means:

---

[3] Under the policy, "arising out of" means "[o]riginating from, growing out of, or flowing from, and requires only that there be some causal relationship between the loss, injury or damage and the activity or event."

[4] The Farm/Ranch Equipment Breakdown endorsement is covered by a different insurance company—Mutual Boiler Re.

Physical loss or damage originating within:

. . . .

 A. All mechanical, electrical, electronic, or fiber optic equipment including "Farm/Ranch" personal property, covered power generating equipment, . . .

And caused by, resulting from, or consisting of:

 B. Mechanical breakdown;

 C. Electrical or electronic breakdown; or

 D. Rupture, bursting, bulging, implosion, or steam explosion.

 However, "equipment breakdown" does not mean physical loss or damage caused by[5] or resulting from any of the following:

 E. Wear and Tear;

 F. Rust or other corrosion, decay, deterioration, mold, hidden or latent defect or any other quality in property that causes it to damage or destroy itself.

. . . .

 M. Loss, damage, cost, or expense directly caused by, contributed to, resulting from, or arising out of the following causes of loss:

 Fire, lightning, combustion explosion, windstorm or hail, [etc.]

 However, if loss or damage not otherwise excluded results, then we will pay for such resulting damage.

**Farm/Ranch Equipment Breakdown Coverage**

We will pay for accidental direct physical loss to covered property caused by "equipment breakdown" except as otherwise stated in this policy.

**The following changes are made to the Special Causes of Loss Index:**
**Electrical Current**

 With regards to Farm/Ranch Equipment Breakdown, the provisions and limitations for Electrical Current in the Special Causes of Loss Index under Exceptions and Limitations are deleted.

**FARM/RANCH OPERATIONS INTERRUPTION**

**Farm/Ranch Operations Interruption Coverage**

We cover loss of earnings and extra expenses resulting directly from the interruption of "farm/ranch" operations "caused by" a covered cause of loss as indicated in the declarations.

. . . .

**Limits of Insurance**

The limit of insurance for this endorsement is indicated in the Declarations for each building covered by this endorsement.

---

[5] "Caused by" is defined as "[t[he primary or efficient event which produces, brings about or gives rise to the loss, injury or damage."

We will pay your actual loss of earnings and extra expenses resulting from a covered loss, subject to the following:
A. Monthly Limit – We will pay no more than 25% of our limit of insurance for loss of earnings for each 30 day period following the loss.
B. Overall Limit – We will pay no more in total for loss of earnings and extra expenses than our limit of insurance.

### III.  Standard of Review

"We review a district court's interpretation of an insurance policy for correction of errors at law.  The district court's factual findings in a bench trial 'are binding on appeal if supported by substantial evidence.'  We review the district court's legal conclusions for correction of errors at law."  *Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 913 N.W.2d 80, 87 (Iowa 2018) (citations omitted).  "We review for abuse of discretion discovery rulings on whether to exclude evidence as a sanction for untimely disclosure."  *Hagenow v. Schmidt*, 842 N.W.2d 661, 669 (Iowa 2014), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016).

### IV.  Analysis

**A.  Causation Ruling.**  Farm Bureau claims the district court's finding that the damages to the electrical systems were caused by a power surge is not supported by substantial evidence.  "Evidence is substantial '[w]hen reasonable minds would accept the evidence as adequate to reach the same findings.'"  *Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 916–17 (Iowa 2017) (alteration in original) (citation omitted).

An insured who has experienced loss and seeks coverage under an insurance policy initially bears the burden "to prove both the property and the peril were covered by the terms of the policy."  *Salem United Methodist Church v.*

*Church Mut. Ins. Co.*, No. 16-0170, 2017 WL 512494, at *1 (Iowa Ct. App. Feb. 8, 2017) (citation omitted). "Insurers relying on exclusions from coverage have the burden to prove their applicability." *Farm Bureau Life Ins. Co. v. Chubb Custom Ins. Co.*, 780 N.W.2d 735, 742 (Iowa 2010). "We construe exclusions strictly against the insurer. Nevertheless, 'we must enforce unambiguous exclusions as written.'" *City of West Liberty v. Emp'rs Mut. Cas. Co.*, 922 N.W.2d 876, 879 (Iowa 2019) (citations omitted). Disagreement over the meaning of a policy's terms or the fact a provision could be worded more clearly or precisely does not necessarily mean the provision is ambiguous. *See id.*

In this case, causation is fundamental to the applicability of any exclusion. If the damage was caused by corrosion, the Unkriches' loss would not be covered. On the other hand, damage caused by a power surge would result in coverage. The parties approach the causation issue as an either/or decision—neither party addresses the possibility both causes could be contributing factors. *Cf. Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 240–41 (Iowa 2015) (examining an "anticoncurrent-cause" provision when a loss event has two causes).

The reports provided by Bitar, Farm Bureau's engineer, found two separate causes. The first report concluded a power surge or power fluctuation and corrosion caused the equipment malfunctions. The second report specifically examined the electrical systems' wiring and attributed that damage to corrosion, finding no evidence of lightning damage or a power surge in the system components.

Although some fan motors had been replaced earlier in the year, the fan motors failed at an increased rate following the storm. Other machines, which had been functioning without problem, failed in the weeks after the storm. We also consider Bitar's initial conclusion that the equipment malfunctions "were the result of a power surge event and power fluctuation that resulted from high wind damages." While the corrosion may have exacerbated the damages, substantial evidence supports the district court's conclusion a power surge event caused damage to the Unkriches' *equipment*.

However, the evidence is undisputed corrosion existed in the electrical system in the Unkriches' confinement buildings. No evidence showed a worsening in the electrical system's condition that could be attributed to any kind of power surge. Bitar did not extensively test the electrical system during his first evaluation. But during the second evaluation, testing all the wiring revealed damage "consistent with the corrosive environment in the two hog nursery buildings. No evidence of blown components or connections was noted in the panels or components in the building." At trial, Bitar testified some of the damage—particularly to light bulbs and fixtures—were the result of long-term issues rather than a single surge. He specifically noted heavy corrosion of some equipment and wiring. DeVries testified an eighteen-year-old hog confinement building is an older electrical system and agreed corrosion develops over time and can result in a need to rewire the building.

Monty testified his electricity—both the generator and then from the power lines—worked following the storm. While fan and feed motors were failing, he did not assert any further power failures or problems with the electricity. No testimony

or evidence indicated the new equipment would not work on the current wiring. Rather, the testimony showed simply that the electrician would not warranty the replacement equipment due to the condition of the wiring. We do not find substantial evidence supports the district court's finding the *electrical system* damage was caused by a power surge.

**B. Equipment Breakdown Endorsement.** Farm Bureau also asserts the court misconstrued the Equipment Breakdown endorsement. Farm Bureau is correct that the district court used the wrong cause-of-loss index in its ruling. The Unkriches' policy calls for using the Special Causes of Loss Index for applicable exceptions to the Unkriches' coverage. However, electrical current damage is covered under the endorsement's changes to the Special Causes of Loss Index; instead of the affirmative assumption of coverage from artificially-generated current as a Named Cause of Loss, the Farm/Ranch Equipment Breakdown endorsement deleted an electrical current exception to coverage. The Unkriches' policy endorsement covers power surges.

We found above the Unkriches had not established coverage as to the electrical system, but they did provide substantial evidence showing a power surge affected some of their equipment. Because the electrical system is not a covered loss, we need not address Farm Bureau's wiring damage argument. As to the equipment, at oral argument Farm Bureau conceded that if a power surge occurred, it would be covered. We find the equipment damage is covered. We remand to the district court for a recalculation of damages not including the costs attributable to the replacement of the electrical system.

**C. Loss of Income Damages.**

*Policy limits.* Farm Bureau further asserts the loss-of-income damages awarded by the court exceed policy limits. The Unkriches do not contest the policy-limits claim but rather argue this is an equitable case and the loss of income was attributable to delays caused by Farm Bureau. Consequently, they argue, the award is akin to a bad-faith denial award.

The Unkriches did not file a bad-faith claim against Farm Bureau. Despite the Unkriches' argument, this case is fundamentally a breach-of-contract claim, with the Unkriches seeking to enforce the contract against Farm Bureau. The Unkriches' policy specifically addresses loss of earnings resulting from an interruption of operations caused by a covered loss. The cases cited by the Unkriches are inapposite because in all the cited cases, the plaintiffs brought bad-faith claims in tort as well as their contract claims. *See, e.g.*, *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 451 (Iowa 2017) ("The employee sued the insurer for common law first-party bad faith."); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 791 (Iowa 1988) ("Dolan filed this action against [insurer] for bad faith failure to settle . . . ."). Moreover, even if the case was filed in equity, the Unkriches sought money damages, not equitable relief, and the case was tried at law with the court ruling on evidentiary objections. *See In re Coe College*, 935 N.W.2d 581, 586 (Iowa 2019) (basing the standard of review based on how the matter was tried, not how it was filed).

The insurance contract clearly limits the loss-of-earnings coverage due to an operations interruption to the limit "indicated in the Declarations page for each building covered by this endorsement." The declarations page limits coverage for

"Farm/Ranch Operations Interruption" of the buildings at the affected address to $15,000 with a $2500 deductible for each building.[6] We enforce the contract equally as to both parties. The Unkriches' loss-of-income coverage is limited to $15,000 per building. We direct the district court to modify the loss-of-income award accordingly.

*Trial evidence.* Farm Bureau asserts the Unkriches did not provide documents supporting their claim of loss of income until immediately before trial, in violation of discovery rules. It argues the documents should have been excluded as a sanction.

> In reviewing a district court's ruling in a discovery matter, we remain mindful that "a trial should be a search for the truth, and our rules of discovery are an avenue to achieving that goal. The discovery process seeks to make a trial into a fair contest with the basic issues and facts disclosed to the fullest practicable extent."

*Hagenow,* 842 N.W.2d at 672 (citation omitted).

While the Unkriches were late in providing supporting documentation for their claimed loss-of-income damages, the claim was not a surprise to Farm Bureau of which it had no knowledge prior to trial. Loss of income was part of the initial claim to Farm Bureau. Loss-of-income damages were also listed as an item of recovery requested in the petition filed. Farm Bureau was on notice of the claim for loss of income, even if it lacked the specific numbers provided in the documentation. Farm Bureau's counsel was able to effectively cross-examine the Unkriches as to the contents of the documentation despite the short notice. Particularly in light of our modification to policy limits on loss-of-income damages—

---

[6] This does not appear to be a standard limit set by Farm Bureau. Several other confinement buildings have significantly higher operation interruption limits.

which Farm Bureau is obliged to cover in the case of a covered loss—Farm Bureau was not prejudiced by the loss-of-income evidence. We find no abuse of discretion.

We therefore affirm the district court's evidentiary ruling denying Farm Bureau's motion to exclude the loss-of-income documentation.

Substantial evidence supports a determination that farm equipment was damaged by a power surge at the Unkriches' property, and we affirm on that issue. Substantial evidence does not support the district court's finding the electrical systems of two buildings were damaged by a power surge, and we reverse that portion of the damages award. We modify the loss-of-income award to policy limits. We remand to the district to recalculate damages in accordance with our opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**